(No. 25499.—

RUDOLPH KOELMEL, *vs.* DORA KAELIN *et al.* Appellees.—
(THE SHELL OIL COMPANY, Appellant.)

*Opinion filed June 14, 1940—Rehearing denied October 2, 1940.*

Joe T. Dickerson, George W. Cunningham, John C. Quilty, and Craig & Craig, for appellant.

Hugh V. Murray, Jr., and William C. Stephens, (David K. Breed, of counsel,) for appellees.

Wham & Wham, and George V. Kempf, for Rudolph Koelmel, appellee on cross-appeal.

Mr. Justice Wilson delivered the opinion of the court:

Rudolph Koelmel filed a complaint in the circuit court of Clinton county claiming title to two parcels of real estate as devisee under the will of his father and by adverse possession for more than thirty years. With the exception of the Shell Oil Company, which will be referred to as Shell, the named defendants were the descendants, their spouses and children, of Magdalena Buehler, deceased sister of the plaintiff. These defendants, who will be called the Buehler heirs, were Dora and Ed Kaelin, Elizabeth Kaiser, Anna

and Claude Hampton, Albert, Dorothy and Louise Buehler, Claude, Evelyn and Robert Reynolds, William and Billie Peck, and Marie and Walter Zipt. Claude Reynolds was represented by David K. Breed, the trustee of his bankrupt estate, and the court appointed Hugh V. Murray, Jr., guardian *ad litem* of Billie Peck, a minor. In their answer the heirs asserted a one-fifth interest in the title. Shell filed an answer and a counterclaim, disclaiming interest in the title, and praying that a lease from the Buehler heirs, covering one tract, be cancelled if their claim of title should fail. A decree was entered in favor of the plaintiff upon both of the grounds alleged in his complaint, and denying the relief sought by Shell. The cause is here upon the direct appeal of Shell and the cross-appeal of the Buehler heirs from the portions of the decree adverse to their respectively asserted interests.

John Koelmel died testate in 1906 owning three tracts of land. His will, duly admitted to probate, devised two of the parcels in the following language: "I give and bequeath to my son Rudolph Koelmel, the fol. tracts of land. * * * The South West quarter of the South West quarter of Section No. Eleven (11). Except one half acre in S. E. Corner of said tract. * * * and three acres in the S. E. Quarter of the North East quarter of the North East quarter of Section No. Two, 2, South of Crooked Creek, * * * Which is given upon the condition, that my son Rudolph Koelmel shall pay to the balance of my heirs the following sums of money." Only the first parcel, containing 39.5 acres, is here in controversy. It actually is located in section one rather than in section eleven, and the second tract, of three acres, is in the southeast, instead of the northeast quarter of said section two. The remaining eighty acres were correctly described and are not involved in this proceeding. The plaintiff distributed, as executor, certain legacies provided in the will, paid $500 to each of the four other heirs in performance of the condition of the devise, and

entered into possession of the real estate. Until the present controversy, he has openly exercised ownership without dispute, and has paid all taxes assessed against the land.

The foregoing facts are adequate for a consideration of the cross-appeal of the Buehler heirs concerning the title to the 39.5 acres. The single issue requiring determination is whether the testamentary description may properly be considered with extrinsic evidence, in order to identify this tract. When extrinsic evidence discloses latent ambiguities in a will, the testator's intent may be determined. by reading the will in the light of the circumstances existing at the time of its execution. (*Norton* v. *Jordan,* 360 Ill. 419; *Bimslager* v. *Bimslager,* 323 id. 303.) The testator's express intent may not be varied, nor may words of description be added, but a part of the description, shown by parol to be false, may be stricken, and the will read as if originally composed only of the remaining language. (*Stevenson* v. *Stevenson,* 297 Ill. 338.) If this remainder is sufficient to identify with certainty land which the testator is shown by parol evidence to have owned, the property thus identified will pass. (*Bimslager* v. *Bimslager, supra; Stevenson* v. *Stevenson, supra; Alford* v. *Bennett,* 279 Ill. 375.) The evidence in the present case discloses that John Koelmel owned no property of the disputed description in section eleven; that no property having excepted from it a half acre in its southeast corner is located in section eleven, and that the testator owned only one tract with an exception of this description, being the 39.5 acres in section one. If the words "section eleven (11)" be stricken from the will, the balance of the devising language conforms in all other respects to the description of the 39.5 acres. This language, containing an exception of a half acre in the southeast corner, sufficiently identifies the only parcel of like description owned by John Koelmel. It need only be mentioned that since the total value of all of the testator's property was $2500, the devise, being conditioned upon the paying of $500

to each of the other four heirs, or an aggregate of $2000, was in net value only $500 to the plaintiff. This circumstance, together with the absence of a residuary clause covering real estate, strengthens the presumption that the testator intended to devise his whole estate. (*Alford* v. *Bennett, supra.*) The court properly found title in the plaintiff as devisee, and it is unnecessary to discuss the effect of his open, notorious and clearly adverse possession for the period exceeding thirty years.

On December 23, 1936, the plaintiff executed an oil and gas lease to Shell, covering both the misdescribed parcels. Shell later discovered the defects in the title and obtained quitclaim deeds from all of the other heirs except the defendants. After negotiations with the Buehler heirs through their attorney, June C. Smith, Shell agreed to waive the question of their title and to pay them royalties on the oil and gas produced from the 39.5-acre tract, in consideration of a lease of this parcel, a deed in the name of the plaintiff covering the three acres, and identical instruments from the minor, to be obtained by the heirs through guardianship proceedings. At the suggestion of Shell, Smith prepared copies of a power of attorney appointing Dora Kaelin with power to sign the instruments on behalf of the other heirs. To obtain their signatures he attached to each copy a letter representing, in part, as follows: "This [proposed lease] is recognizing fully your interest in the forty acres and gives you exactly the share in the oil produced therefrom which you would have if there was no question whatever about the title. In other words, the Shell corporation, by taking the lease from you, is admitting that you * * * are the owners of a one-fifth interest in the forty acre tract and entitled to receive one-fortieth of the oil produced from the whole forty acres. * * * We have agreed to get the whole matter adjusted amicably, and without controversy with Rudolph Koelmel, that we would execute a quitclaim deed to this three-acre tract." George Kasserman, a repre-

sentative of Shell, took copies of the power of attorney, with the letters attached, and obtained the signatures of heirs residing in other cities. At a final conference the following clause was deleted from a printed lease form submitted by Shell: "If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals therein provided for shall be paid the said lessor only in the proportion which lessor's interest bears to the whole and undivided fee." A typewritten clause was added to the form, providing: "It is understood and agreed that the 1/40 part of the oil and gas reserved to lessor shall be construed to mean the 1/40 part of all the oil and gas produced from said southwest quarter of the southwest quarter of section one, except one-half acre in the southeast corner thereof." Dora Kaelin then executed the lease and a deed to the three acres. Similar instruments were later executed on behalf of the minor by a duly appointed guardian, and approved by the court. All these leases and deeds have been retained by Shell.

It is Shell's contention that the leases must be construed in themselves, without extrinsic evidence, and that the heirs may not continue to collect rent since by the decree their title has been terminated. The heirs maintain, in support of the decree, that their rights rest not upon an ordinary landlord and tenant relationship, since Shell was already a lessee under the plaintiff, but upon an agreement compromising and settling their *bona fide* claim of title, and that the leases must be construed as a part of this agreement.

An executory agreement, verbal or written, for the performance of distinct and separate acts is not merged in or superseded by an instrument executed in only partial performance of its provisions, but remains in full force and effect as to the provisions not covered by the instrument. (*Gillett* v. *Teel,* 272 Ill. 106; *Laflin* v. *Howe,* 112 id. 253.) Except in so far as it estops the parties from denying the

validity of the instrument, a statement of consideration in a lease or other instrument has been held to be one of the terms which can be varied by a prior agreement. (*Ludeke* v. *Sutherland,* 87 Ill. 481; *Morris* v. *Tillson,* 81 id. 607.) The compromise of a *bona fide* claim of title is well recognized as valid consideration for an agreement by the owner, or one holding under him. (*Woodburn* v. *Woodburn,* 123 Ill. 608.) After avoiding the assertion, and possible litigation of claims made in good faith against his title, a party may not urge an absence or failure of consideration for the compromise on the ground that the claims were later determined to be defective or unenforceable. (*Dougherty* v. *Duckels,* 303 Ill. 490; *Walker* v. *Shepard,* 210 id. 100.) A lessee who accepts a second lease from one claiming an outstanding title against the premises, may not avoid payment of rent to the second lessor by showing a failure of his title. (*Cox* v. *Cunningham,* 77 Ill. 545; *Carter* v. *Marshall,* 72 id. 609; *Dunbar* v. *Bonesteel,* 3 Scam. 32.) In *Hamilton* v. *Pittock,* 158 Pa. 457, 27 Atl. 1079, where a lessee under an oil and gas lease had obtained a second lease from one who claimed an interest in the title, the court denied him the right to dispute the title of the second lessor in an action for rent, and said: "A man may if he sees fit, where there are conflicting titles, take a lease from each of the owners of it, and if he is not deceived by assertions in regard to the matter, he would have to pay both." In accord with this decision are *Phillips Petroleum Co.* v. *Eckroat,* 42 Pac. (2d) (Okla.) 464; *Atlas Oil Co.* v. *Logan,* 116 So. (La.) 582; *Peper* v. *Cashell,* 122 Fed. 614; *Lyon* v. *Washburn,* 3 Colo. 201. It is also well settled that even though an instrument is executed independently of any prior agreement of larger scope, other agreements and circumstances preceding its execution may be considered in order to determine the intention of the parties in their use of specific words or clauses. *Chicago Auditorium Ass'n* v.

*Fine Arts Building,* 244 Ill. 532; *Street* v. *Chicago Wharfing Co.* 157 id. 605.

The records in January, 1938, disclosed that the Buehler heirs in all probability were owners of a one-fifth interest in the 39.5 and the three-acre tracts. Shell's own representatives discovered the heirs' interest and instigated negotiations resulting in leases and deeds covering the separate tracts. Its possession under the leases has continued undisturbed to the present time. Without more, Shell would not be permitted to urge the failure of title in its second lessor to defeat its obligations under the lease. Within the four corners of the lease, however, are contained anticipatory provisions in avoidance of cancellation for failure of title. The lease from the minor is to be construed as if similarly altered, the printed form having been left unchanged through inadvertence. (*Atlas Oil Co.* v. *Logan, supra.*) The parties disclosed their intention to obligate Shell irrespective of the validity of the heir's title, by not only omitting, but positively deleting, a covenant regulating royalties in proportion to the actual title. The typewritten addition for a special construction of the one-fortieth royalties is a direct covenant to pay one-fortieth, and is not dependent upon, but expressly in disregard of title in the premises leased. The existence of the underlying contract of compromise is clearly shown by the deeds to the three acres, by the verbal agreement disclosed in the testimony and partly reduced to memorandum by the attorney for the heirs, and by Smith's letter to the heirs, which Shell's representative must reasonably be believed to have read. As was properly decreed, the leases from the Buehler heirs were supported by good consideration apart from their title, and the obligation of Shell to perform the lease covenants remains unchanged.

The decree of the circuit court of Clinton county is therefore affirmed.

*Decree affirmed.*