489 F.2d 974
 180 U.S.P.Q. 112
 RANSBURG ELECTRO-COATING CORPORATION,
Plaintiff-Counter-Defendant-Appellant,
v.
SPILLER AND SPILLER, INC., Defendant-Counter-Claimant,
Third-Party Plaintiff-Appellee, v. IONIC
ELECTROSTATIC CORPORATION, Third-Party
Defendant-Appellee.
 Nos. 72-1496, 72-1497.
 United States Court of Appeals, Seventh Circuit.
 Argued April 18, 1973.
Decided Nov. 16, 1973, Order Dec. 7, 1973.
 
 David J. Gibbons, Clyde F. Willian, Chicago, Ill., for Ransburg.
 Robert E. Wagner and Robert E. Brown of Stone, Wagner & Aubel, Chicago, Ill., for Spiller.
 Before SWYGERT, Chief Judge, and MURRAH[1] and BARNES,[2] Senior Circuit Judges.
 SWYGERT, Chief Judge.
 
 
 1
 This is an appeal and a cross-appeal from summary judgments granted in a diversity action brought by Ransburg Electro-Coating Corporation against Spiller and Spiller, Inc. The action stems from an agreement executed in settlement of a 1965 patent infringement suit brought by Ransburg against Spiller. The background leading to the settlement included a series of prior and contemporaneous patent infringement suits litigated by Ransburg against Ionic, the manufacturer and vendor of the Ionic Models 25 and M50 Electrostatic Sprayers utilized by Spiller, At all pertinent times Ransburg manufactured and marketed electrostatic spray coating systems and owned basic patents in the field of commercial electrostatic painting.
 
 
 2
 In 1957 Ransburg brought an action in the United States District Court for the District of Maryland against Ionic and one of its customers claiming that the Ionic Model M50 atomizer infringed Ransburg's patents. The Maryland district court held the Ransburg patents valid and Ionic guilty of infringement. Ransburg Electro-Coating Corp. v. Proctor Electric Co., 317 F.2d 302 (4th Cir. 1963). In 1965, in a separate but related action, the Maryland district court held Ionic in contempt of the injunctive provisions of its prior decree, for manufacturing and selling the Ionic Model 25 atomizer (not directly litigated in the prior suit). Ransburg Electro-Coating Corp. v. Proctor Electric Co., 242 F.Supp. 28 (D.Md.1965). Shortly before the Maryland district court's decision holding Ionic in contempt, Ransburg brought suit against Spiller in the United States District Court for the Northern District of Illinois. Ransburg charged that Spiller's use of Ionic Models M50 and 25 atomizers was an infringement of its patents. Thereafter a number of meetings were held between the parties which culminated in a settlement agreement and the dismissal of Ransburg's suit against Spiller.
 
 
 3
 The agreement, dated November 12, 1965, provided that Spiller would pay Ransburg $70,000 in sixty monthly installments as compensation to Ransburg for infringement of specified Ransburg patents because of Spiller's prior use of the Ionic Models M50 and 25 equipment. The agreement further provided that Ransburg would license Spiller's future use of Ionic Model 25 equipment, the license agreement being embodied in a separate document dated December 1, 1965. During 1966, 1967, and the first half of 1968, Spiller met its monthly obligations on the settlement agreement. In April 1968 the Fourth Circuit reversed the Maryland district court's decision, holding that the Ionic Model 25 Electrostatic Sprayer did not infringe Ransburg's patents. Ransburg Electro-Coating Corp. v. Ionic Electrostatic Corp., 395 F.2d 92 (4th Cir. 1968). In June 1968 Spiller notified Ransburg that it would no longer make payments on the settlement agreement.
 
 
 4
 On January 16, 1970, Ransburg commenced this action to recover $33,833.23 as the balance due on the settlement agreement. Spiller counterclaimed against Ransburg requesting a refund of all monies paid under the agreement. Spiller, in a second count, also requested a refund of all payments made on the license agreement. In addition, Spiller filed a third-party complaint against Ionic, asserting various theories of indemnification. On motion for summary judgment, Ransburg was denied enforcement of the settlement contract, and judgment was entered for Spiller. The district court denied, also by way of summary judgment, Spiller's counterclaims and the third-party claim and entered judgment for Ransburg and Ionic respectively. Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc., 340 F.Supp. 1385 (N.D.Ill.1972).
 
 
 5
 We reverse the summary judgment granted Spiller on Ransburg's complaint. We affirm the summary judgment, denying Spiller's counterclaims. Finally, we reverse the denial of summary judgment on Spiller's third-party claim against Ionic and remand for a resolution of the issues raised by the third-party complaint.
 
 
 6
 * As has been noted, the settlement agreement consisted of two parts: the agreement to pay a specific sum for past infringements and a license agreement to use in the future equipment covered by Ransburg's patents. In the instant action Ransburg sought only to recover the balance due on the covenant covering past infringements; it did not seek to enforce the license agreement.
 
 
 7
 Spiller contends, in effect, that the agreements signed on November 12 and December 1 comprise a single license agreement-- retroactive for the period of time covered by the $70,000 settlement figure. On that premise it argues that since the Fourth Circuit determined that the subject of the agreement, the Ionic Model 25 atomizer, does not infringe Ransburg patents, an application of the principles laid down in Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969), and Blonder-Tongue Labs., Inc. v. University Foundation, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), precludes enforcement of the settlement agreement.
 
 
 8
 The district court essentially agreed with Spiller's contention with respect to the unfulfilled portion of the agreement. It did, however, conclude that as to the partial performance, Spiller was not entitled to a refund of the sums previously paid. As to Ransburg's claim for enforcement of the agreement, the district judge wrote:
 
 
 9
 Under the overriding federal policy expressed in Lear and reaffirmed in Blonder-Tongue that 'all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent', I find based on the foregoing facts that the 1965 settlement agreement between Ransburg and Spiller is unenforceable because it represents a demand for royalties for the use of an idea (i.e. the Model 25) which because it belongs to the prior art system is a part of the public domain.
 
 
 10
 With respect to Spiller's counterclaim for a refund of the monthly installments already paid, the district judge also found support in Lear and Blonder-Tongue for concluding that Spiller should not prevail. On that point the judge said:
 
 
 11
 The remaining issue as between Ransburg and Shiller is whether Spiller should be permitted to prevail on its counterclaim and thereby recover all sums previously paid pursuant to the settlement agreement. In this regard Spiller relies on a statement in Lear that the licensee would be permitted to avoid the payment of all royalties accruing after Adkins' 1960 patent issued if he could prove the patent was invalid. The context in which the statement was made, however, demonstrates that it was not intended to create in a patent licensee the unfettered right to recover all royalties paid under a patent later declared invalid. The only thing decided in Lear was that a licensee in that situation would be relieved from the liability of paying royalties during the time he is challenging the validity of the patent. My reading of Lear on this point is buttressed by language appearing in the Supreme Court's opinion in Blonder-Tongue. There the court said 'Lear permits an accused infringer to accept a license, pay royalties for a time, and cease paying when financially able to litigate validity, secure in the knowledge that invalidity may be urged when the patentee-licensor sues for unpaid royalties.' Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 346, 91 S.Ct. 1434, 1451, 28 L.Ed.2d 788. I find no expression in either Lear or Blonder-Tongue which would create an independent cause of action in a licensee permitting the recovery of royalties paid on a patent which is subsequently held invalid. Therefore, with respect to its counterclaim, defendant Spiller's motion for summary judgment is denied and the counterclaim is ordered dismissed and judgment entered for Ransburg.
 
 
 12
 Addressing ourselves to Spiller's retroactive licensing argument, we hold the settlement agreement to be nothing more than a promise by Spiller to pay liquidated damages for past infringements in return for a dismissal of the infringement suit. Spiller erroneously equates a settlement for past infringement with a license for prospective use requiring the payment of continuing royalties. In those cases where the courts have been confronted with the precise issue of settlement for past infringement versus a license, they have recognized that release for past wrongdoing is not the equivalent of a license to do rightfully the same thing in the future. Rude v. Wescott, 180 U.S. 152, 9 S.Ct. 463, 32 L.Ed. 888 (1889); United States v. Youngstown Sheet & Tube Co., 171 F.2d 103 (6th Cir. 1948); Raytheon Mfg. Co. v. Radio Corporation of America, 286 Mass. 84, 190 N.E. 1 (1934).
 
 
 13
 Having characterized the agreement of the parties as a settlement to pay damages for past injuries and not a retroactive licensing agreement, it would appear that, on its face, Lear is inapposite. It is argued, however, that enforcement of the settlement agreement would be contrary to the federal patent policy enunciated in Lear of ridding the public of invalid patents thereby dedicating ideas to the common good.
 
 
 14
 We recognize that enforcement of the settlement contract will result in the payment of damages, in part, for the use of a device that has judicially been determined to be outside of the scope of Ransburg's patents and part of the 'prior art.' Nonetheless, it is well established that the good faith compromise of a bona fide claim is a valid consideration to support a settlement contract, Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co., 105 F.2d 943 (7th Cir. 1939); Koelmel v. Kaelin, 374 Ill. 204, 29 N.E.2d 106 (1940); and that
 
 
 15
 . . . where parties have knowingly and purposely made an agreement to compromise and settle a doubtful claim, whose character and extent are necessarily conditioned by future contingent events, it is no ground for the avoidance of the contract that the events happen very differently from the expectation, opinion, or belief of one or both of the parties. Chicago & N.W. Ry. Co. v. Wilcox, 116 F. 913, 915 (8th Cir. 1902).
 
 
 16
 It cannot be gainsaid that in general settlements are judicially encouraged and favored as a matter of sound public policy. Williams v. First National Bank, 216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625 (1910).
 
 
 17
 Spiller urges, however, that the federal patent policy, as enunciated in Lear, that 'all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent,' prevails over the policy favoring settlement of disputes. Although the federal patent policy prevails over 'the technical requirements of contract doctrine' (395 U.S. at 670, 89 S.Ct. at 1911), we believe that such policy must occupy a subsidiary position to the fundamental policy favoring the expedient and orderly settlement of disputes and the fostering of judicial economy. To allow a subversion of the deeply instilled policy of settlement of legitimate disputes by applying the federal patent policy as enunciated in Lear would effectively strip good faith settlements of any meaning. The vehicle of settlement would be a useless item if contracts, such as the one here, were subject to invalidation after they were consummated. We think the federal patent policy should not be carried so far. Indeed, in our decision in Maxon Premix Burner Co., Inc. v. Eclipse Fuel Eng. Co., 471 F.2d 308 (7th Cir. 1972), we were faced with a choice between the public policy encouraging tests of patent validity and the public policy favoring conservation of judicial time and limitations on expensive litigation. We held the policy favoring judicial economy to be more significant. To allow Spiller to reopen this settlement contract would be contrary to the avowed need for judicial economy declared in Blonder-Tongue, Labs., Inc. v. University Foundation, 402 U.S. 313, 334-49, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971), and hardly consonant with our decision in Maxon.
 
 
 18
 Moreover, if we were to allow the successful challenge of the instant settlement contract, we would do little toward furthering the collateral policy declared in Lear favoring the expeditious and early challenge to the validity of the underlying patent. 395 U.S. at 673, 674, 89 S.Ct. 1902. See also Troxel Manufacturing Co. v. Schwinn Bicycle Co., 465 F.2d 1253, 1257 (6th Cir. 1972). To permit such a challenge would be to condone a potential practice wherein the alleged patent infringer would settle on more favorable terms than those if he were to be adjudged an infringer and, secure with his settlement, he would sit back and await the challenge to the underlying patent by another, an event which might come years after he had entered into his settlement contract. If the patent were successfully challenged, he would then turn to the courts, seeking the benefit of a fortuitous event, and would contest the settlement consummated perhaps years prior and at a time when he too had an opportunity to question the patent's validity. To facilitate such tactics would be inconsistent with the Lear doctrine favoring the expeditious and early challenge to the validity of the underlying patent.
 
 II
 
 19
 Spiller counterclaimed for refunds of monies paid on the settlement contract, and on the license agreement. Since we have determined that Ransburg may enforce the settlement contract, it necessarily follows that Spiller's claim for refund of monies paid on the contract must fail. With respect to the license agreement the decision in Troxel Manufacturing Co. v. Schwinn Bicycle Co., 465 F.2d 1253 (6th Cir. 1972), is dispositive, and we therefore hold that Spiller's claim for a refund on the license agreement should have been summarily denied. (The district court, for reasons unexplained, did not decide this issue.)
 
 
 20
 Spiller raises various affirmative defenses of patent misuse, fraud, duress, and attorney misconduct. The district court did not discuss these issues, but after a review of the record we find these asserted defenses to be without merit.
 
 III
 
 21
 The district judge denied Spiller's motion for summary judgment on its third-party complaint on the ground that Spiller's payments on the settlement agreement should be characterized as 'essentially royalties.' Since the record is barren of any evidence that Ionic had agreed 'to reimburse Spiller for royalties paid to Ransburg pursuant to a license agreement,' the judge reasoned that Spiller could not prevail on its thirdparty cimplaint. In view of our holding that the settlement agreement cannot be characterized as a promise to pay royalties for past infringements, we reverse the summary judgment in favor of Ionic and remand for a trial of all the issues raised by the third-party complaint and the answer addressed thereto. Each party will bear his own costs on these appeals. complaint. In view of our holding
 
 ON MOTION FOR CLARIFICATION
 ORDER
 
 22
 This matter comes before the court on the motion of plaintiff-counter-defendant-appellant for clarification of this court's decision in the above captioned cause. On consideration whereof, said decision is modified by the following additions:
 
 
 23
 1) The denial of Ransburg's motion for summary judgment is reversed; 2) This case is remanded for any further proceedings with respect to Ransburg's motion.
 
 
 
 [1]
 The Honorable Alfred P. Murrah, Senior Circuit Judge of the United States Court of Appeals for the Tenth Circuit, is sitting by designation
 
 
 [2]
 The Honorable Stanley N. Barnes, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, is sitting by designation