Mary S. **KRALY**, Plaintiff-Appellant
and Cross-Appellee,

v.

**NATIONAL DISTILLERS AND CHEMI-
CAL CORPORATION,** Defendant-Ap-
pellee and Cross-Appellant.

Nos. 73–1589, 73–1590.

United States Court of Appeals,
Seventh Circuit.

Argued April 25, 1974.

Decided July 25, 1974.

As Amended Sept. 4, 1974.

Rehearing Denied Oct. 2, 1974.

George W. Thompson, Chicago, Ill., Marvin C. Soffen, New York City, for National Distillers.

James M. Wetzel, Chicago, Ill., for Mary S. Kraly.

Before CASTLE, Senior Circuit Judge, SPRECHER, Circuit Judge, and SOLOMON, Senior District Judge.*

CASTLE, Senior Circuit Judge.

Plaintiff Mary S. Kraly appeals from an order of the district court holding claims 3–6 of patent No. 3,095,342,[1] relating to a specific type of tubeless tire repair insert, invalid and a partial defense to an action for specific performance and damages for breach of an agreement granting defendant National Distillers and Chemical Corporation's predecessor-in-interest, H. B. Egan Manufacturing Co., a nonexclusive license under the above patent. National Distillers cross-appeals from that aspect of the order holding it liable to Kraly under the licensing agreement for royalties for the fourth quarter of 1969 and the first three quarters of 1970. On appeal, Kraly contends that principles of *res judicata* bar National Distillers from challenging the validity of the patent because an earlier litigation between Kraly and Egan was dismissed with prejudice when the parties accepted a licensing agreement which provided, *inter alia*, that Egan would not contest the validity of the patent. Kraly alternatively argues that the court erred in determining that the claims of the patent in question were invalid. In its cross-appeal, National Distillers asserts that it is not liable to Kraly for royalties under the licensing agreement, even though it continued to stamp Kraly's patent number on its tire inserts through September 1970, because Kraly obtained the patent through misrepresentation. National Distillers also argues that it is excused from its duty to pay royalties because Kraly breached its licensing agreement by failing to take measures to abate unlicensed sales after receiving adequate notice of such sales from National Distillers. We affirm the order of the district court.

On November 4, 1966, Mary Kraly instituted an action in federal district court against Sears, Roebuck & Co. and H. B. Egan Manufacturing Co., Inc.[2] That suit alleged infringement of the same patent involved in this case, and Egan asserted defenses of invalidity and fraud in his answer. On February 27, 1967, Kraly and Egan entered into an agreement providing that Egan would receive a nonexclusive license from Kraly for production of the patented tire repair insert, that Egan would pay royalties to Kraly on each licensed insert sold, and that Egan would mark each insert with "Licensed under U. S. Patent No. 3,095,-342" or its equivalent. Moreover, the agreement provided that Egan's obligations would be conditioned on Kraly's bringing suit for infringement to prevent substantial quantities of unlicensed sales within six months after notice of such sales was given by Egan. Finally, Egan would pay Kraly $8,000 "in full

---

* Honorable Gus J. Solomon, Senior District Judge, District of Oregon, is sitting by designation.

1. The plaintiff, Mary S. Kraly, is the successor-in-interest to John Kraly, the original patentee of No. 3,095,342, issued on January 25, 1963.

2. Mary S. Kraly, Executrix of the Estate of John Kraly v. Sears, Roebuck & Co. and H. B. Egan Manufacturing Co., Inc., No. 66 C 2016 (N.D.Ill.1967).

satisfaction of any and all claims" that Kraly might have against Egan arising from the latter's "past sales of tire repair inserts," and would not "contest the validity" of the patent. Thereafter, the court dismissed the action with prejudice (even though the parties had requested that the dismissal be entered without prejudice). The court stated that the parties, by agreement, had made full settlement of all claims for infringement, with Egan taking a license under the Kraly patent.

The parties or their successors complied with the terms of the licensing agreement through each quarter of 1967, 1968, and the first three quarters of 1969. Additionally, Mrs. Kraly received $8,000 from Egan. National Distillers sent Kraly a letter on May 5, 1969, allegedly giving notice of substantial unlicensed sales, and no royalty payments were made subsequent to the third quarter of 1969.

## I.

■ Citing Phillips v. Shannon, 445 F.2d 460, 462 (7th Cir. 1971), Kraly first argues that a "dismissal with prejudice is as conclusive of the rights of parties as an adverse judgment after trial, being res judicata of all questions which might have been litigated in the suit." We do not quarrel with the general proposition that a judgment with prejudice entered upon a settlement or compromise is binding as to the parties and their privies. See generally, 1B J. Moore, Federal Practice, ¶ 0.409 (2d ed. 1948). Nonetheless, this proposition is subject to qualification where overriding principles are implicated, and it is well-established that one such principle is "the public interest in obtaining a judicial determination of the invalidity of a worthless patent." Id.; accord, Ad-

dressograph-Multigraph Corp. v. Cooper, 156 F.2d 483 (2d Cir. 1946). In the circumstances of this case, therefore, the doctrine of res judicata has no applicability.

■ Kraly next asserts that the court erred in extending the rationale of Lear, Inc. v. Adkins, 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969) to a prior dismissal with prejudice and in concluding that the dismissal did not estop National Distillers from defending the suit on the ground of invalidity. In Lear, a contract action for unpaid royalties, the Court held that the licensee was not estopped from challenging the validity of the patent notwithstanding a prior licensing agreement. The Court reasoned that "federal law requires, that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent," id. at 668, 89 S.Ct. at 1910, and that this federal policy prevails over the "technical requirements of contract doctrine." Id. at 670, 89 S.Ct. 1902. In Business Forms Finishing Service, Inc. v. Carson, 452 F.2d 70 (7th Cir. 1971), this court held that even though Lear involved a purely private agreement entered into prior to any litigation, the rationale of Lear required that a party be permitted to challenge validity notwithstanding a prior consent decree which had held the patent not infringed. The Court, relying on Addressograph-Multigraph Corp. v. Cooper, supra, stated that unless there was an adjudication of infringement embodied in the consent decree, the decree would not estop the licensee from subsequently challenging the validity of the patent. Id. at 75; accord, Broadview Chemical Corp. v. Loctite Corp., 474 F.2d 1391, 1395 (2d Cir. 1973). In this case, as in Business Forms, there was no adjudication of infringement.[3] It is true that

---

3. We note that the district court altered the terms of the decree prepared by the attorneys to provide for a stipulated dismissal of the suit with prejudice. The lower court's action comported with the prevailing pre-Lear thought that acknowledgment of the validity of a patent through acceptance of a licensing

agreement incorporated into a consent decree barred the parties or their privies from subsequently challenging the validity of the patent. In the trial transcript, Judge Will states: "This is a case in which acknowledgment of validity of the patent and an agreement not to attack it is part of the consideration for the

Egan agreed to pay Kraly $8,000 in settlement of "any and all claims." That, however, is not the equivalent of an adjudication of infringement.[4] Certainly the expeditious settlement of a potentially lengthy and costly lawsuit as well as the obtaining of a licensing agreement can be expected to have an independent value to the licensee. Moreover, in contrast with Addressograph-Multigraph v. Cooper, *supra,* the parties to this suit were ordered to bear their own costs and fees. Even if we assume, however, that the consent decree embodied an adjudication of infringement, we do not believe that the *Lear* rationale would necessarily be inapplicable. To allow the parties to consent to an adjudication of infringement would simply result in the erection of another obstacle to tests of patent validity. We conclude that National Distillers, the licensee, is not estopped from challenging the validity of the patent, even though a prior consent decree incorporated an understanding not to challenge the validity of the patent. As Judge Stevens points out in *Business Forms,* "A contrary result could not be reconciled with 'the public interest in a judicial determination of the invalidity of a worthless patent.'" 452 F.2d at 75.

Kraly argues that this result conflicts with our decision in Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc., 489 F.2d 974 (7th Cir. 1973), and in support of this argument cites Schlegel Manufacturing Co. v. King Aluminum Corp., 369 F.Supp. 650 (S.D.Ohio 1973). We cannot agree with the *Schlegel* court that *Ransburg* supports the proposition that "once a party enters a consent decree accepting the validity of a particular patent, that party is estopped from raising the validity issue in subsequent litigation regarding the same parties and the same patent." *Id.* at 653. While it is true that in *Ransburg* this court reasoned that "the *Lear* case did not signify that something called 'federal public policy on patents' could be used to undo the effects of a valid lawsuit settlement contract," *id.,* that reasoning was applied only to that portion of the settlement involving *past* infringement.

In *Ransburg,* the court was confronted with the issue of the extent to which a prior settlement of an infringement action is enforceable once noninfringement has been established. There, as here, the settlement agreement included both a payment for past infringement and a prospective licensing agreement. With respect to the payment for past infringement described in the opinion as the "settlement contract," the court allowed the plaintiff to recover the balance due on the basis that the agreement was "a promise . . . to pay liquidated damages for past infringements in return for a dismissal of the infringement suit." 489 F.2d at 977. The court properly recognized the difference between the consideration supporting a "release from past wrongdoing" and a "license to do rightfully the same thing in the future." The enforcement of the settlement contract, unlike prospective enforcement of a licensing agreement, does not represent a demand for royalties for use of an idea within the public domain but rather a demand for the *quid pro quo* of a "good faith compromise of a bona fide claim."

disposition of a lawsuit, as well as for a license agreement." The court continued that while there was no express finding of validity in the decree—in contrast with the acknowledgment of validity embodied in the agreement—this case was distinguishable from *Lear,* which involved a purely private agreement. The clear implication from the transcript is that in recognizing the agreement as the basis for dismissal, the court by incorporation adjudicated the issue of validity.

4. If the parties had requested a dismissal with prejudice, we would have no trouble con-

cluding that the $8,000 payment was "a grant of some relief from which infringement can be inferred." Understanding that a dismissal with prejudice is *res judicata* as to all issues presented, the parties would clearly have intended the payment to represent an admission of infringement. Insofar as a stipulated dismissal is interpreted as denoting only what the parties acknowledge, it is unclear what effect the court's decision to enter the order with prejudice has on conclusions to be drawn with respect to what the agreement acknowledged.

*Id.* at 976–978. It was for this reason that the court concluded,

> Although the federal patent policy prevails over 'the technical requirements of contract doctrine' . . . we believe that such policy must occupy a subsidiary position to the fundamental policy favoring the expedient and orderly settlement of disputes and the fostering of judicial economy. . . . The vehicle of settlement would be a useless item if contracts such as the one here, were subject to invalidation after they were consummated. We think the federal patent policy should not be carried so far. 489 F.2d at 978.

Furthermore, the court reasoned that a failure to enforce the settlement contract would not effectuate the policy of encouraging early tests of patent validity enunciated in *Lear*, inasmuch as it would allow the alleged infringer to settle at a time when he had an opportunity to litigate validity secure in the knowledge that the settlement would cost nothing in the event the patent was subsequently declared invalid. *Id.*

In this case, the defendant has not counterclaimed for a refund of the monies paid for past infringement. The decision in *Ransburg* does not support Kraly's position because the policy considerations are expressly grounded on the distinction between "settlement contracts" and licensing agreements.[5]

### II.

■ ■ Kraly further contends that the court erred in determining that claims 3–6 of the patent were invalid. Claim 3 relates to the structure and composition of the tire repair insert, while claims 4–6 refer to the method of its application and use to repair a tire while it is mounted on the vehicle. More specifically, Kraly argues respecting claim 3 that the court erred in its application of the obviousness test and in its conclusions that there was only one distinction between the prior art and the patent in question and that that distinction was obvious to persons of ordinary skill. We cannot agree, and we find that the court applied pertinent patent law [6] in reaching its amply-supported conclusions.

Claim 3 describes a multi-ply, wafer-type tire repair insert with a base lamination of cured rubber and an overlapping or outer facing lamination of uncured rubber. The claim specifies that the insert is folded prior to insertion into the tire injury, so that the uncured rubber lamination is on the outside. Combined with the outer lamination is a chemical accelerator. A rubber-based adhesive containing a second accelerator is first applied to the tire injury, and when the insert with its own accelerator in the laminated uncured rubber is inserted into the tire, self-vulcanization of the insert to the tire is initiated.

The court found it undisputed that two-ply laminations of cured and uncured rubber were known and used in patching tires from the outside and on the wheel, and further, that it was known that inserts with an outer layer of uncured

5. This court's opinion in Maxon Premix Burner Co. v. Eclipse Fuel Engineering Co., 471 F.2d 308 (7th Cir. 1972) is equally unavailing to Kraly. In *Maxon*, this court ruled that a party who had lost an infringement action at the trial level was estopped from subsequently contesting the validity of the infringed patent when that party had failed to offer any proof at the trial level related to the question of validity and had, in fact, made statements admitting the validity of the patent claims. The court concluded that neither the policy encouraging tests of patent validity nor the policy of conserving judicial resources would "be served by a ruling which permitted a party to contest validity only when the close

of the trial revealed that it had lost on the issue of infringement." *Id.* at 312.

6. Kraly additionally cites as error the failure of the court to respond to a motion filed pursuant to rule 52(b) of the Federal Rules of Civil Procedure for a finding as to the presumption of validity accorded to the patent in the case. By its terms, rule 52(b) permits the court to make additional findings at its discretion. As that rule of adjudication was implicit in the court's resolution of the case, whatever the court's personal view, it was not an abuse of discretion for the court to determine that the requested finding was unnecessary.

rubber could be activated by a sulfur accelerator and heat to initiate vulcanization. The court then focused on Kraly's claimed invention: "a combination of a special insert with a special adhesive doubled for insertion, or inserted, into a tire injury for binding to the hole."

In applying the criteria articulated by the Supreme Court in Graham v. John Deere Co., 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966), the court began its analysis by examining the scope of the principal prior art. It found that the Chambers patent[7] describes a laminated insert, either round, oval or angular, with an outer layer of uncured rubber combined with sulfur. The vulcanization is accomplished by the heat generated in use on the road, and no cement involving a second accelerator is used in the process. The court further found that the Belgian patent[8] uses two accelerators to achieve vulcanization, which is accomplished through road heat.

The court concluded that nothing in the prior art precisely duplicated the Kraly patent, in that one accelerator was incorporated in the layer of uncured rubber while the second one was contained in the cement. It then considered whether this combination would have been obvious to a person reasonably knowledgeable or skilled in the art. The court found that neither the chemist from whom Kraly obtained the technical and chemical information regarding acceleration (and specifically the "self-vulcanizing" cement) nor Kraly's patent attorney believed that "the inclusion in the vulcanizing cement of a second accelerator to trigger activation of the primary accelerator in the uncured laminations" was patentable "simply because it is a feature which at least half a dozen companies are using."[9] Kraly's lawyer had, moreover, advised his client that it was his opinion that "no invention is involved in retaining this triggering relationship in two materials long used in tire repairs, when changing to a wafer form one such material whose form had previously been different," an obvious reference to the round or oval Chambers insert. The court then properly concluded that persons of ordinary skill in the art were well aware of the possibility of the combination and method of accelerating vulcanization found in the Kraly patent and did not consider it patentable. Moreover, such persons found that the shape of the insert resulted in no functional difference in the repair process.[10]

In affirming the court's determination of invalidity, we specifically reject Kraly's contention that Finding No. 46 of the lower court opinion is clearly erroneous. That finding stated that it was

---

7. Chambers and Moats Patent No. 2,966,187.

8. Gruber Belgian Patent No. 546,957.

9. Letter from Ephraim Banning, Esq., to Horace Brose, Kraly's agent and prospective partner, dated December 13, 1961, quoting in part from a letter sent by Robert A. Flory, Kraly's chemist, to Brose dated October 9, 1961.

10. Kraly does not specify the grounds on which she contests the finding of invalidity respecting claims 4–6. These claims refer to the proper method for applying the tire repair insert. Essentially, the method prescribes that one remove the protective cover from the insert, prestretch it, and then place it in a needle and insert it into the tire injury, which has already been coated with a cement containing the second accelerator. In holding that the prior art as to method of inserting tire repair inserts into a punctured tire in-

cluded all the elements described in the three claims, the court stated:

Nothing therein is new. All tire repair from the outside involves the insertion of rubber into the hole or injury with a needle. The Court repaired punctures in his bicycle tires more than fifty years ago by this method. Nor is the use of cement in connection therewith novel, or the prestretching of the insert before insertion. This leaves only the use of an insert containing an accelerator in the cement which we have already discussed.

We conclude as to claims 4, 5 and 6 that the prior art as to the method of insertion of inserts into a punctured tire included all elements described in the three claims and they are, therefore, also invalid.

We concur in these findings and the conclusion of the trial court.

known prior to Kraly's alleged invention that a flat section of a laminated tire repair material could be folded, inserted folded end first, and then cemented with a suitable adhesive into an injury opening, for the repair of tubeless tires. We note first that Kraly does not challenge, and therefore presumably accepts, the court's Finding No. 44, in which the court stated more explicitly that the "Chambers insert is applied to repair an injury *in the same manner* as the Kraly insert, *i. e.,* the protective covering is removed and the insert is folded upon itself before being inserted into the injury opening" (emphasis added). Moreover, we find that the challenged finding is well-supported by the Mix patent,[11] the Pearson book,[12] and the lower court's judicial notice of his method for repairing bicycle tires as a boy.

■ National Distillers' cross-appeal relates to the court's awarding of royalties to Kraly for the last quarter of 1969 and the first three quarters of 1970 plus interest. The court keyed the terminal date of National Distillers' royalty obligation to the date on which National Distillers stopped marking its product with Kraly's patent number. Anticipating the result reached by this court in *Ransburg,* the lower court presciently reasoned:

> We do not, however, believe that our present finding of invalidity relieves the defendant of its obligation to pay royalties for the period in which it was enjoying the benefit of its license and representing to the public that its product was licensed under the Kraly patent. So long as [the] defendant sought the protection of the patent, it is only equitable that it should discharge its royalty obligation under the license agreement. Once it ceased to represent that its product was licensed under the patent, it had repudiated the license agreement and assumed the risk of being found liable for infringing without receiving the concomitant commercial benefit of being a licensee.

While it is true that patent licensees are not estopped from challenging the validity of a licensed patent merely because they have marked their products with the patent number, Beckman Instruments, Inc. v. Technical Development Corp., 433 F.2d 55 (7th Cir. 1970), cert. den., 401 U.S. 976, 91 S.Ct. 1199, 28 L.Ed. 2d 326 (1971), *Ransburg* properly distinguishes between the refusal of courts to enforce prospectively the terms of a licensing agreement when the underlying patent has been declared invalid and the appropriate use of judicial power to enforce the terms of a licensing agreement during the period prior to an adjudication of invalidity in which both parties benefited from the agreement. This principle was implicitly approved in Troxel Manufacturing Co. v. Schwinn Bicycle Co., 465 F.2d 1253 (6th Cir. 1972), by the Sixth Circuit, which refused to permit licensees of a patent subsequently held to be invalid to recover all royalties ever paid on that patent. The application of such equitable principles by the district court with respect to this issue was eminently correct.

■ National Distillers further contends that its obligation to pay royalties was excused by Kraly's breach of a contractual condition requiring Kraly to bring suit for infringement to bar substantial unlicensed sales when it receives adequate notice from National Distillers. National Distillers argues that its letter of May 5, 1969 provided adequate notice within the meaning of the licensing agreement, and therefore, that Finding No. 51 is clearly erroneous. We find that the court below properly and fully dealt with this factual question, and we adopt that portion of the court's opinion which follows:

> It is obvious from the undisputed facts that, at the time the letter in question was written, the defendant had not yet ascertained the number of inserts sold per year by the companies named nor had conducted any chemical tests on their products to determine

11. Mix patent No. 553,562.

12. II. Pearson, Pneumatic Tires 1086–1087.

whether or not they were "unlicensed sales of Licensed Inserts in substantial quantities (which, for the purpose hereof, shall be deemed to be sales from any one source at the rate of 400,000 Licensed Inserts over a period of any one calendar year). . . ."

While the license agreement does not define the investigation which the licensee was to make prior to invoking Section 6.02, it is reasonable to infer that it had an obligation to do more than simply list eight of its competitors in a letter to the licensor. It is clear that defendant on May 5, 1969 had no knowledge on which to base its notice under Section 6.02 other than the fact that the companies it named were selling outside-in repair kits. Indeed, on the record before us, there is no evidence that any of the companies utilized a combination of an accelerator in the insert and a second accelerator in the cement to achieve self-vulcanization.

We conclude, therefore, that defendant's letter of May 5, 1969 was not an adequate notice under Section 6.02 of the license agreement.

■ We have considered National Distillers' claim that Kraly's alleged misrepresentation to the U. S. Patent Office precludes any award of royalties. We find that the actions of Kraly's attorney [not the attorney of record in this appeal] were hardly exemplary and agree with the district court that "[i]t is inconceivable that in any but an *ex parte* proceeding such a contention [i. e., Kraly's claim of inventiveness] would have been successful or would even have been urged by an attorney who had previously written to his client that, in his opinion, 'no invention is involved' in either the triggering mechanism or the shape." Nonetheless, we do not find that such conduct amounted to a misrepresentation. We therefore affirm the district court's award of royalties.

The judgment of the district court is affirmed.

Affirmed.