CARDING SPECIALISTS (CANADA), LTD., AND CROSROL CARD-
ING DEVELOPMENT, INC. v. GUNTER & COOKE, INC.

No. 7514SC24

(Filed 7 May 1975)

Patents § 2— patent infringement — settlement contract — defenses of
invalid patent and no infringement — counterclaim for royalties paid

In an action to recover under a contract settling plaintiffs' claims
against defendant for patent infringement, defendant may not properly
raise the defenses that the patent is not valid or was not infringed,
nor may defendant assert a counterclaim for royalties it has actually
paid under the settlement contract on the grounds that the patent is
invalid or was not infringed.

APPEAL by defendant from *Braswell, Judge.* Judgment en-
tered 14 November 1974 in Superior Court, DURHAM County.
Heard in the Court of Appeals 18 March 1975.

This matter was previously before us on appeal by Crosrol
Carding Development, Inc., (hereinafter referred to as "Cros-
rol") and defendant Gunter & Cooke, Inc., (hereinafter referred
to as "Gunter & Cooke"). We affirmed the trial court's denial
of defendant's motion to dismiss on the ground that plaintiff
was not the real party in interest and the court's order requiring
Carding Specialists (Canada), Ltd., (hereinafter referred to as
"Carding") to be made a party plaintiff to the litigation. Card-
ing became a party plaintiff, and amended complaint was filed.
Plaintiffs seek damages for the alleged breach of contract by
defendant. The contract sued on was executed 23 February 1968
and constituted a compromise agreement between defendant and
Carding for patent infringement by defendant. Defendant agreed
to pay Carding $110,000 as general damages for infringement of
U. S. Letters Patent No. 3,003,195. The sum was to be paid by
applying to the $110,000 the purchase price of certain equip-
ment to be purchased by Carding or Crosrol from Gunter &
Cooke at the lowest mill price applicable to bulk sales in effect
from time to time less a 10% O.E.M. discount. Defendant filed
answer in which, by way of further answer and defense, it

averred that plaintiffs and defendant entered into an overall agreement evidenced by two separate documents whereby all disputes between them with respect to the patent were compromised and settled: (1) the document attached to the amended complaint providing for payment of compromised damages for infringement, and (2) the document attached to the answer constituting an agreement for the payment of future royalties to be paid by defendant to Carding. By way of a second further answer and defense, the defendant averred that both the agreements are unenforceable "[b]y reason of estoppel arising from the decision of the United States District Court for the Middle District of Georgia in *Carding Specialists (Canada) Limited v. Lummus Cotton Gin Company*, 234 F. Supp. 444 (1964), in which claims 1, 2, and 3 of United States Letters Patent No. 3,003,195 underlying said agreements were declared invalid". Other reasons for invalidity of the patent were averred. Defendant further averred that because of the unenforceability of the agreements, it was entitled to recover from plaintiffs by way of counterclaim the payments it had made to plaintiffs, or either of them, in the amount of $51,456.43, with interest.

Plaintiff filed a motion, under Rule 12 (b) (6), to dismiss the allegations of the counterclaim inserted in the second further answer and defense for failure to state a claim upon which relief can be granted on the ground that alleged invalidity "and/or noninfringement of a licensed patent affords no legal basis for the recovery of royalties actually paid by a patent licensee", and a motion, under Rule 12 (f), to strike paragraphs 1 and 2 of the second further answer and defense "as immaterial matter attempting to set forth an insufficient defense, on the ground that patent invalidity, non-infringement and unenforceability do not constitute defenses to the causes of action set forth in the Amended Complaint." The court entered an order granting the motions and dismissing the counterclaim and striking paragraphs 1 and 2 of the second further answer and defense. Defendant appealed.

*Smith, Moore, Smith, Schell and Hunter, by Beverly C. Moore and H. Miles Foy, for plaintiff appellees.*

*Nye, Mitchell & Bugg, by R. Roy Mitchell, Jr., and Richards, Shefte & Pinckney, P.A., by Channing L. Richards, for defendant appellant.*

MORRIS, Judge.

This appeal presents two related questions. The first is: In an action to recover under a contract entered into between plaintiffs and defendant, the purpose of which was to settle all claims of plaintiffs for patent infringement against defendant, may defendant validly raise the defenses that the patent infringed was not valid or was not actually infringed? The second question is necessarily answered when the first question is answered. It is: May the defendant assert a counterclaim for royalties it has actually paid under the compromise agreement on the ground that the patent which is the subject of the agreement upon which suit is brought is invalid or was not actually infringed?

At the time the parties entered into the 1968 agreement compromising the alleged liability of defendant for patent infringement, claims 1, 2 and 3 of the underlying Patent No. 3,003,195 had been declared invalid by the United States District Court for the Middle District of Georgia. See *Carding Specialists (Canada) Limited v. Lummus Cotton Gin Company*, 234 F. Supp. 444 (1964).

North Carolina has long recognized and adhered to the logic of the legal principle that where a party knowingly accepts consideration in full settlement of a disputed claim, the compromise agreement is valid, binding, and conclusive and will not be set aside or disturbed for mistakes of law. 2 Strong, N. C. Index 2d, Compromise and Settlement, § 1, p. 160; *Keith v. Glenn*, 262 N.C. 284, 136 S.E. 2d 665 (1964), and cases there cited; *McGill v. Freight*, 245 N.C. 469, 96 S.E. 2d 438 (1957); *Dixie Lines v. Grannick*, 238 N.C. 552, 78 S.E. 2d 410 (1953); *Askew's, Inc. v. Cherry*, 11 N.C. App. 369, 181 S.E. 2d 201 (1971), where plaintiff sued on an open account and defendants denied the debt, pled an accord and satisfaction as an affirmative defense, and also filed a third party action against Red Carpet Inn to recover any amount obtained by Askew in its action against them. Red Carpet Inn answered and pled a settlement agreement between it and defendants, third party plaintiffs, setting out the agreement in its verified answer. Red Carpet then moved for summary judgment and filed a supporting affidavit setting out in detail payments made under the settlement. The court granted the motion for summary judgment finding that there was no genuine issue of material fact. We affirmed on appeal.

In *Fisher v. Lumber Co.*, 183 N.C. 486, 111 S.E. 857 (1922), plaintiff brought an action for breach of contract for support. Plaintiff's evidence was that he was in the employ of defendant company at one of its lumber mills in 1908 and was a strong and vigorous young man. He received serious and permanent injury as the result of an accident in the course of his employment. After his hospitalization had ended, he was preparing to bring a suit when he was called to defendant's office by one of its foremen and was told that if he would not enter suit the company would give him employment for the rest of his life at some work he could perform in his crippled condition and pay him a living wage sufficient to support him and his family. Plaintiff agreed and continued in the employ of the company for some 12 years receiving wages adequate to support his family. However, by 1920, due to the rising cost of living, his wages were no longer adequate to keep his family from want. He had an interview with a company representative and reminded him of the agreement. The company refused to increase his wages and plaintiff was forced to seek employment elsewhere. The company denied negligence, pled the statute of limitations to bar recovery on that ground, denied the existence of an agreement and averred that if an agreement were made, it was made by one without authority to bind the company, was too vague to be enforceable and was without consideration. The jury found plaintiff was injured by defendant's negligence, that plaintiff was not contributorily negligent, that there was a contract between plaintiff and defendant, that defendant wrongfully breached it, that plaintiff did not waive it, that the cause of action was not barred by the statute of limitations, and awarded damages. On appeal the Supreme Court found no error, holding that the contract was by way of compromise and adjustment of a bona fide claim of plaintiff against the company and such an adjustment would furnish the consideration for the agreement regardless of whether the claim was well grounded. The Court said:

> " 'It is well settled that the law favors compromises, when made in good faith, whereby disputed claims are settled, and especially is this true when related to family controversies; and a promise, when thus made, in extingishment of a doubtful claim, furnishes sufficient consideration to support a valid contract. While it is not necessary that the contention which forms the basis of such a compromise shall be meritorious in order to support the promise, yet it

is essential in order to furnish a consideration therefor, that the contention be made in good faith and be honestly believed in.' " *Fisher v. Lumber Co., supra,* at p. 525, citing *Dickerson v. Dickerson,* 19 Ga. App. 269.

There is no question that a bona fide dispute existed between plaintiffs and defendant over patent validity and infringement of the patent prior to 23 February 1968. The agreement is, therefore, binding on the parties thereto. Defendant, by entering the agreement, compromised any dispute it had with plaintiffs with respect to past infringement, patent validity, and enforcement and gave up its right to take those matters to court. Neither plaintiff in this action claims any rights against defendant on the basis of the separate licensing agreement allegedly entered into by the parties.

We conclude that unless the federal patent policy prevails over the general policy of this State favoring the settlement of disputes, the judgment of the trial court should be affirmed. We are of the opinion that no federal policy exists which requires a reversal.

Defendant urges that the principles enunciated in *Lear v. Adkins,* 395 U.S. 653, 89 S.Ct. 1902, 23 L.Ed. 2d 610 (1969), holding unsatisfied license obligations could not be enforced if it were shown that the licensed patent was invalid, and *Blonder-Tongue Labs. v. University Foundation,* 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed. 2d 788 (1971), holding that a patentee whose patent is held invalid in his suit against one alleged infringer may be precluded, under the doctrine of collateral estoppel, from asserting the validity of the patent in suit against a different alleged infringer, should be applied to the case before us and that by doing so, it becomes apparent that the court erred in striking defendant's further answer and defense and dismissing the counterclaim. We do not agree.

In *Ransburg Electro-Coating Corp. v. Spiller & Spiller, Inc.,* 489 F. 2d 974 (7th Cir. 1973), there had been an agreement executed in settlement of a 1965 patent infringement suit brought by Ransburg against Spiller, and the suit was dismissed. Under the agreement Spiller was to pay Ransburg $70,000 in 60 monthly installments as compensation for infringement of certain specified Ransburg patents. There was a separate agreement between the parties with respect to future licensing of Spiller's use of certain equipment involved in the dispute. Spiller

paid Ransburg for 1966, 1967 and the first half of 1968 at which time the Fourth Circuit reversed the Maryland District Court and held that the equipment involved in the dispute between Ransburg and Spiller did not infringe Ransburg's patents. Very shortly thereafter, Spiller notified Ransburg that it would make no further payments under the settlement agreement. Ransburg brought suit to collect the balance due, but did not seek to enforce the licensing agreement. Spiller counterclaimed for all amounts paid under the settlement agreement. The district court, by way of summary judgment, denied Spiller's counterclaim. On appeal, that judgment was affirmed. Chief Judge Swygert noted that the district court judge had found support in *Lear* and *Blonder-Tongue* for concluding that Spiller should not prevail on his counterclaim. The district court judge had written:

> "The remaining issue as between Ransburg and Spiller is whether Spiller should be permitted to prevail on its counterclaim and thereby recover all sums previously paid pursuant to the settlement agreement. In this regard Spiller relies on a statement in *Lear* that the licensee would be permitted to avoid the payment of all royalties accruing after Adkins' 1960 patent issued if he could prove the patent was invalid. The context in which the statement was made, however, demonstrates that it was not intended to create in a patent licensee the unfettered right to recover all royalties paid under a patent later declared invalid. The only thing decided in *Lear* was that a licensee in that situation would be relieved from the liability of paying royalties during the time he is challenging the validity of the patent. My reading of *Lear* on this point is buttressed by language appearing in the Supreme Court's opinion in *Blonder-Tongue*. There the court said '*Lear* permits an accused infringer to accept a license, pay royalties for a time, and cease paying when financially able to litigate validity, secure in the knowledge that invalidity may be urged when the patentee-licensor sues for unpaid royalties.' *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 346, 91 S.Ct. 1434, 1451, 28 L.Ed 2d 788. I find no expression in either *Lear* or *Blonder-Tongue* which would create an independent cause of action in a licensee permitting the recovery of royalties paid on a patent which is subsequently held invalid. Therefore, with respect to its counterclaim, defendant Spiller's motion for

summary judgment is denied and the countertclaim is ordered dismissed and judgment entered for Ransburg."

In affirming the district court in allowing the summary judgment with reference to the counterclaim, Judge Swygert said:

"We recognize that enforcement of the settlement contract will result in the payment of damages, in part, for the use of a device that has judicially been determined to be outside of the scope of Ransburg's patents and part of the 'prior art.' Nonetheless, it is well established that the good faith compromise of a bona fide claim is a valid consideration to support a settlement contract, *Galion Iron Works & Mfg. Co. v. J. D. Adams Mfg. Co.*, 105 F. 2d 943 (7th Cir. 1939) ; *Koelmel v. Kaelin*, 374 Ill. 204, 29 N.E. 2d 106 (1940) ; and that

. . . where parties have knowingly and purposely made an agreement to compromise and settle a doubtful claim, whose character and extent are necessarily conditioned by future contingent events, it is no ground for the avoidance of the contract that the events happen very differently from the expectation, opinion, or belief of one or both of the parties. *Chicago & N.W. Ry. Co. v. Wilcox*, 116 F. 913, 915 (8th Cir. 1902).

It cannot be gainsaid that in general settlements are judicially encouraged and favored as a matter of sound public policy. *Williams v. First National Bank*, 216 U.S. 582, 30 S.Ct. 441, 54 L.Ed. 625 (1910)."

With respect to the question of overriding federal policy the court said:

"Spiller urges, however, that the federal patent policy, as enunciated in *Lear*, that 'all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent,' prevails over the policy favoring settlement of disputes. Although the federal patent policy prevails over 'the technical requirements of contract doctrine' (395 U.S. at 670, 89 S.Ct. at 1911), we believe that such policy must occupy a subsidiary position to the fundamental policy favoring the expedient and orderly settlement of disputes and the fostering of judicial economy. To allow a subversion of the deeply instilled policy of settlement of legitimate dis-

putes by applying the federal patent policy as enunciated in *Lear* would effectively strip good faith settlements of any meaning. The vehicle of settlement would be a useless item if contracts, such as the one here, were subject to invalidation after they were consummated. We think the federal patent policy should not be carried so far. Indeed, in our decision in *Maxon Premix Burner Co., Inc. v. Eclipse Fuel Eng. Co.*, 471 F. 2d 308 (7th Cir. 1972), we were faced with a choice between the public policy encouraging tests of patent validity and the public policy favoring conservation of judicial time and limtiations on expensive litigation. We held the policy favoring judicial economy to be more significant. To allow Spiller to reopen this settlement contract would be contrary to the avowed need for judicial economy declared in *Blonder-Tongue, Labs., Inc. v. University Foundation*, 402 U.S. 313, 334-49, 91 S.Ct. 1434, 28 L.Ed. 2d 788 (1971), and hardly consonant with our decision in *Maxon*.

Moreover, if we were to allow the successful challenge of the instant settlement contract, we would do little toward furthering the collateral policy declared in *Lear* favoring the expeditious and early challenge to the validity of the underlying patent. 395 U.S. at 673, 674, 89 S.Ct. 1902. *See also Troxel Manufacturing Co. v. Schwinn Bicycle Co.*, 465 F. 2d 1253, 1257 (6th Cir. 1972)."

In *Kraly v. National Distillers and Chemical Corporation*, 502 F. 2d 1366 (7th Cir. 1974), the court, approved the principle set out in *Ransburg* and said:

"In *Ransburg*, the court was confronted with the issue of the extent to which a prior settlement of an infringement action is enforceable once noninfringement has been established. There, as here, the settlement agreement included both a payment for past infringement and a prospective licensing agreement. With respect to the payment for past infringement described in the opinion as the 'settlement contract,' the court allowed the plaintiff to recover the balance due on the basis that the agreement was 'a promise . . . to pay liquidated damages for past infringements in return for a dismissal of the infringement suit.' 489 F. 2d at 977. The court properly recognized the difference between the consideration supporting a 'release from past wrongdoing' and a 'license to do rightfully the same thing

in the future.'. The enforcement of the settlement contract, unlike prospective enforcement of a licensing agreement, does not represent a demand for royalties for use of an idea within the public domain but rather a demand for the *quid pro quo* of a 'good faith compromise of a bona fide claim.' *Id.* at 976-978. It was for this reason that the court concluded,

> Although the federal patent policy prevails over 'the technical requirements of contract doctrine' . . . we believe that such policy must occupy a subsidiary position to the fundamental policy favoring the expedient and orderly settlement of disputes and the fostering of judicial economy. . . . The vehicle of settlement would be a useless item if contracts such as the one here, were subject to invalidation after they were consummated. We think the federal patent policy should not be carried so far. 489 F. 2d at 978.

Furthermore, the court reasoned that a failure to enforce the settlement contract would not effectuate the policy of encouraging early tests of patent validity enunciated in *Lear,* inasmuch as it would allow the alleged infringer to settle at a time when he had an opportunity to litigate validity secure in the knowledge that the settlement would cost nothing in the event the patent was subsequently declared invalid. *Id.*

In this case, the defendant has not counterclaimed for a refund of the monies paid for past infringement. The decision in *Ransburg* does not support Kraly's position because the policy considerations are expressly grounded on the distinction between 'settlement contracts' and licensing agreements."

For the reasons stated in this opinion, we reach the conclusion that the trial court properly allowed the motion to strike the second further answer and defense and the motion to dismiss the counterclaim for any amounts paid on the settlement agreement involving past infringement.

Affirmed.

Judges VAUGHN and CLARK concur.