William J. DUNGAN, Plaintiff,

v.

COLT INDUSTRIES, INC., a Pennsylvania corporation, F. D. Farnam Co., an Illinois corporation, Robert G. Farnam, John Farnam, Johnston Bell, Franklin Farnam, Raymond Braski and Edward Jacks, Defendants.

No. 79 C 4727.

United States District Court,
N. D. of Illinois, E. D.

Feb. 22, 1982.

Bradley M. Glass and G. Kent Yowell, Littlejohn, Glass & Yowell, Ltd., North-brook, Ill., for plaintiff.

Alan B. Castator and Barry B. Kreisler, Hollowbow & Taslitz, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BUA, District Judge.

The plaintiff in this action is a former shareholder in F. D. Farnam Company

which has since been bought by Colt Industries, Inc. ("Colt"). Both the Farnam Company and Colt Industries are defendants. Also named as defendants are 1) Robert G. Farnam, John Farnam, Johnston Bell, Franklin Farnam and Raymond Braski, former directors of F. D. Farnam Company and 2) Edward Jacks, former accountant, business consultant and registered agent for the F. D. Farnam Company.

Plaintiff sold his stock to F. D. Farnam Company prior to its purchase by Colt, for allegedly less than its true value as a result of a settlement agreement entered into in a prior lawsuit in this court entitled *Dungan v. F. D. Farnam Co., et al.*, No. 77 C 1620 (N.D.Ill.1980). The case at bar is an action for compensatory and punitive damages for failure to disclose material information concerning the value of the stock.[1] Plaintiff relies on a theory of breach of fiduciary relationship as well as 15 U.S.C. § 78j and S.E.C. Rule 10b–5 as authority for this action. Jurisdiction over this matter lies under 28 U.S.C. §§ 1331, 1332 and 15 U.S.C. § 78aa. The case has been tried on stipulated facts.

As the stipulated facts indicate, the settlement in the first lawsuit was originally negotiated in a pretrial conference held between attorneys for the plaintiff and defendants on July 10, 1978. The court entered an order allowing the plaintiff's jury demand and ordering the cause dismissed by agreement of the parties "all matters in controversy having been settled." Also, at the July 10, 1978 pretrial conference, plaintiff's attorneys informed the court that the settlement amount of $107,109.59 was subject to approval by the plaintiff. Accordingly, the court entered and continued generally a motion to reinstate the action.

Subsequently, negotiations between the attorneys for the plaintiff and defendants continued. On August 2, 1978, plaintiff's counsel informed defendants that plaintiff had approved the settlement amount. At the same time, counsel requested that the settlement amount be paid on a deferred basis to assist plaintiff's income tax planning which required that the transfers not be completed until January 2, 1979. As an accomodation to plaintiff regarding his tax situation, defendants agreed to this request.

The actual exchange was implemented by means of an escrow agreement entered into by the parties on October 7, 1978. The agreement provided that the plaintiff was to receive $60,000 for his stock. Five thousand dollars were paid to the plaintiff when the stock was transferred to an escrow account, and the balance of $55,000[2] was to be paid to the plaintiff on January 2, 1979.[3]

On September 12, 1978, Robert Burns, president of Holley Carboretor, a subsidiary of Colt Industries, Inc., telephoned Robert G. Farnam concerning the purchase by Colt Industries of the F. D. Farnam Company's stock. The deal was negotiated in the following weeks and finalized on September 26, 1978 when Colt offered to buy 100% of the F. D. Farnam Company stock for $16,000,000 to be paid at a closing scheduled for January 3, 1979. On October 9, 1978, Colt was informed by Robert G. Farnam of the settlement of plaintiff's original lawsuit, and the selling price of the Farnam stock was accordingly reduced by $60,000—the amount to be paid by F. D. Farnam to the plaintiff for his stock. At the same time, as a condition of its purchase, Colt required that it be indemnified by the stockholders

1. Plaintiff originally raised the claim which is the subject matter of this suit in a motion to vacate the original lawsuit. That motion was denied. Although defendants originally argued in a motion for summary judgment that the denial of the motion to vacate had a *res judicata* effect on the present action, the parties now agree that the court's order was without prejudice to the present action. Stipulated facts at 10.

2. As has already been stated, the total payment received by the plaintiff from the defendant was $107,109.59. The balance of the amount in excess of $60,000 was in settlement of plaintiff's claims in the initial action for commissions and expenses.

3. During the time plaintiff's stock was in escrow, it was listed in corporate records as being owned by Speidel and Co., trustees. As of January 2, 1979, the stock became treasury stock.

in Farnam against any further claims by William J. Dungan and/or others related to transactions or settlement. It was agreed that Colt would retain $300,000 for one year from the closing date to cover contingent liabilities.[4]

■ At the outset, this court finds unpersuasive plaintiff's argument that the sale of his stock was not consummated until October 7, 1978 when plaintiff and defendant entered into the escrow agreement or January 2, 1979 when the stock was ultimately transferred from the escrow account to Farnam and Company. Plaintiff asserts that either of these is the crucial date prior to which this court must assess the existence or nonexistence of omissions of material facts regarding the sale. As has already been stated, the manner in which the stock transfer was implemented was merely a concession to plaintiff's tax planning. It cannot be said that the mode of transfer in any way affected the finality of the settlement and sale agreed to by the attorneys for the parties on July 10, 1978 and ratified by the plaintiff on August 2, 1978. It is well settled that settlement agreements are contracts and are governed by general principles of contract law. *Ransburg Electro-Coating Corp. v. Spiller and Spiller, Inc.*, 489 F.2d 974, 977 (7 Cir. 1973); *Roberts v. Browning*, 610 F.2d 528, 533–536 (8th Cir. 1979). In this case, although it might be said that the contract was formed on either July 10 or August 2, under no theory could this court find that the date of contract formation was October 7, 1978 or January 2, 1979.[5] Therefore, the central issue in this lawsuit is whether or not defendants, other than Colt, in negotiating their purchase of plaintiff's stock, failed to disclose any material facts known to them prior to August 2, 1978 which might have affected the settlement figure. It is this court's conclusion that defendants[6] did not make full disclosure of material information in their possession at the time plaintiff ratified the settlement figure, and that, as a result, plaintiff is entitled to recover under Count II of his complaint.[7]

■ Based on the deposition testimony which was taken in connection with plaintiff's motion to vacate the prior action and which has been incorporated as part of the present lawsuit, the court finds that prior to August 2, 1978 defendants 1) had been advised by their accountant, defendant Jacks, that they needed three years of profitable performance before they could successfully sell the Farnam Company, 2) were aware of the fact that fiscal year 1978 (which ended on May 31) had been a "third good year," and 3) had in fact discussed the possibility of selling the company with certain unidentified interested parties. In light of these facts and the reasonable inferences that may be made from them, this court concludes that defendants 1) had seri-

---

4. The indemnification agreement provided as follows:

  "(a) The stockholders, jointly and severally hereby agree to indemnify and hold Colt harmless against any and all liability for any loss, damage, judgment, claim, settlement, or expense arising from or in connection with or as a result of (i) the purchase by Farnam from Speidel and Co., ..., on January 2, 1979, of the shares of Class A Common Stock of Farnam held by Speidel on such date (herein called the Speidel stock) or (ii) any of the transactions or events preceding or related to such purchase or the acquisition by Speidel of such stock, including, without limitation, any claims of W. J. Dungan.

5. Plaintiff has attempted to argue that negotiation of the settlement agreement actively continued after August 2, 1978; however, there is no indication that such negotiation involved anything more than working out the details of the deferred transfer of and payment for plaintiff's stock.

6. There is no evidence of any involvement of Colt Industries prior to September 12, 1978, in the transactions which form the basis for this lawsuit. Consequently, no recovery may be had against Colt. The words defendants, as used from this point on in the opinion, will refer to all defendants *except* Colt.

7. As has already been stated, plaintiff's complaint contains two counts. The first is based on a theory of breach of fiduciary relationship and the second is based on section 10(b) of the Securities Act of 1934 and Rule 10b–5 promulgated thereunder. Since Count I is subsumed by Count II, this court will address only the latter.

ously contemplated sale of the entire Farnam Company prior to negotiating the purchase of plaintiff's stock, 2) that this fact is one which would have materially affected the value of plaintiff's stock, 3) that plaintiff relied on defendant's statements as to the value of the stock, 4) that defendants knowingly failed to disclose the information in their possession, and 5) that, as a result, defendants violated the federal securities laws.

The depositions of Edward Jacks and Robert G. Farnam provide ample support for this court's factual findings. Defendant Jacks in his deposition, indicated that he had counseled the Farnam Company with regard to the fact that three good years were needed before the company could seriously contemplate sale. (Jacks Deposition at 7.) This fact is corroborated by the deposition of defendant Robert G. Farnam. The questioning was as follows:

Q  Do you recall a conversation with Jacks in which he said that if you're going to sell your stock to the company, you better wait till you've had three good years?

A  We've talked about different things of that nature, sure.  That's right.

(Farnam Deposition at 18.)

The deposition testimony also compels the court's finding that defendants were aware of the fact that fiscal year 1978 *had been* a third good year.  Robert G. Farnam, at page 8 of his deposition was asked the following.

Q  All right.  Do you know that you'd had a successful fiscal year for the fiscal year ended May 31, 1978?

A  Did we know that?

Q  Yes.  When did you first know that that was a successful year?

A  We had a pretty good indication of it *before the year end*, because we're looking at the figures all the time. (emphasis added).[8]

Farnam's testimony is borne out by the facts.  The final audit for the year 1978 indicates that the F. D. Farnam Company had after tax profits of $1,530,507 for the fiscal year ending May 31, 1978.  This figure represents a 22.39% increase over the fiscal year ending May 31, 1977.  In light of this significant increase in profits and Mr. Farnam's previously mentioned assertion that "we're looking at the figures all the time," this court finds incredible defendants' implication that they were unaware prior to the time of the final audit report of the fact that they had had a "third good year," and that the time was ripe for sale.

Finally, the deposition testimony requires this court to find that defendants had in fact seriously contemplated sale of the company prior to negotiating their settlement with the plaintiff.  Both the depositions of defendant Jacks and defendant Robert G. Farnam indicate that sale had been discussed within the company (Jacks Deposition at 4–5, Farnam Deposition at 11) and with potential purchasers (Farnam Deposition at 10).  The statements of Farnam and Jacks considered in conjunction with the fact that the company had decided that sale would have to be preceded by "three good years" and the fact that the defendants knew that 1978 *had been* a third good year compel only one reasonable inference, namely that by August 2, 1978 defendants were seriously considering selling the company at a substantial profit once they had acquired plaintiff's stock.

■  It is this court's conclusion, based upon the above findings of fact that defendants have violated section 10(b) of the Securities Act of 1934, 15 U.S.C. § 78(j) and S.E.C. Rule 10b–5 promulgated thereunder.  In order for such a violation to occur, plaintiff must prove that defendants intentionally failed to disclose material facts to plaintiff and that plaintiff relied to his detriment on defendants' actions.  *Franklin Life*

8.  Although it is true that a final audit report was not issued until approximately August 24, 1978 (Jacks Deposition at 6) and that the final figures were not available to defendants until approximately August 14 or 20 (Jacks Deposi-

tion at 7, 8), the evidence indicates that monthly figures were provided by defendant Jacks (Farnam Deposition at 7–8) and that these figures led defendants to anticipate a profit for 1978.  (Jacks Deposition at 8).

*Insurance Co. v. Commonwealth Edison Co.,* 451 F.Supp. 602, 607–608 (S.D.Ill.1978 *aff'd* 598 F.2d 1109 (7th Cir. 1979), *cert. den.* 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979); *Affiliated Ute Citizens v. U. S.,* 406 U.S. 128, 153–154, 92 S.Ct. 1456, 1472, 31 L.Ed.2d 741 (1972); *Ernst and Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 1381, 47 L.Ed.2d 668 (1976). Plaintiff has proved his case by a preponderance of the evidence.

■ There is no question that the information which was undisclosed to plaintiff was material. The Supreme Court has defined the materiality requirement under Rule 10b–5 to encompass those facts "that a reasonable investor might have considered ... important in the making of ... [his] decision." *Affiliated Ute Citizens, supra* 406 U.S. at 153–154, 92 S.Ct. at 1472; *see also Mills v. Electric Auto-Lite Co.,* 396 U.S. 375, 384, 90 S.Ct. 616, 621, 24 L.Ed.2d 593 (1970). This standard is met in this case. It is beyond dispute that had plaintiff been fully informed of the information regarding the Farnam Company's financial successes over the three years preceding and including fiscal year 1978 and of defendant's plans to sell the company, this knowledge would have been a substantial factor in negotiating the sales price of the stock. Obviously, the likely prospect of sale of a financially successful company would affect each shareholder's assessment of the value of his stock. The information should have been disclosed.

■ This court's finding that the undisclosed information was material is dispositive of the issue of reliance. In a case of alleged non-disclosure, once the facts withheld are found to be material, as in this case, positive proof of reliance is not required. *Affiliated Ute Citizens, supra,* 406 U.S. at 153, 92 S.Ct. at 1472; *Wright v. Heizer Corp.,* 560 F.2d 236, 249 (7th Cir. 1977), *cert. den.* 434 U.S. 1066, 98 S.Ct. 1243, 55 L.Ed. 2767 (1978); *Franklin Life Insurance Co. v. Commonwealth Edison Co.,* 451 F.Supp. 602, 609 (N.D.Ill.1978), *aff'd* 598 F.2d 1109 (7th Cir. 1979), *cert. den.* 444 U.S. 900, 100 S.Ct. 210, 62 L.Ed.2d 136 (1979).

■ Finally, there is no question that plaintiff has sufficiently proven scienter on the part of the defendants, the final element of any Rule 10b–5 violation, *see generally Ernst and Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). Here, where the record shows that defendants knew that the time was ripe for sale, and yet failed to disclose this information to plaintiff despite its obvious materiality, it cannot be gainsaid that defendants' non-disclosure evidences intent beyond mere negligence which is sufficient to impose liability under section 10(b) and Rule 10b–5. *Cf. Nelson v. Serwold,* 576 F.2d 1332, 1336–38 (9th Cir. 1978).

Judgment is entered in favor of plaintiff against defendants Farnam Company, Robert G. Farnam, John Farnam, Johnston Bell, Franklin Farnam, Raymond Braski and Edward Jacks in the amount of $302,-187.61. Plaintiff's requests for attorney fees, punitive damages and interest are denied.

IT IS SO ORDERED.