422 So.2d 1037 (1982)
Harry A. GAINES, Appellant,
v.
NORTRUST REALTY MANAGEMENT, INC., an Illinois Corporation, Appellee.
No. 82-458.
District Court of Appeal of Florida, Third District.
November 30, 1982.
Magill, Reid, Kuvin & Lewis and R. Fred Lewis, Miami, for appellant.
*1038 Mershon, Sawyer, Johnston, Dunwody & Cole and Robert T. Wright, Jr., and Manuel Kushner, Miami, for appellee.
Before HENDRY, DANIEL S. PEARSON and JORGENSON, JJ.
DANIEL S. PEARSON, Judge.
The appellant, Gaines, leased a suite in the Security Trust Building, a downtown office building, from the appellee, Nortrust Realty Management, Inc. By the terms of the lease, Gaines was granted "the right and option" to extend the term for an additional five years beginning June 1, 1980. Paragraph 25 of the lease provided that:
"In the event that the Lessee exercises the aforesaid option term ... the amount of the base rental rate shall be determined by the average rental rate currently charged for new or renewal tenants for similar space in the Security Trust Building ... at the time the option to renew is exercised."
On February 1, 1980, Gaines timely notified Nortrust of his intention to exercise his option. Nortrust thereafter advised Gaines that the new base rental would be $13.50 per square foot per year, which, according to Nortrust, was the "going rate" being charged new tenants and tenants seeking to renew their leases as of February 1, 1980. Gaines disagreed with Nortrust's calculation of the new base rental rate. He claimed that Paragraph 25 of the lease required that the base rental rate be the average rent paid by all tenants in the building as of February 1, 1980, which he calculated to be approximately $10.30 per square foot per year.
In August 1980, Nortrust brought a complaint for a declaratory judgment which, after setting forth the above dispute, requested that the court resolve the dispute by determining the proper amount of base rental due under the lease from June 1, 1980.
Sometime later, the trial began. The transcript  all of seven pages  reflects that during the testimony of Nortrust's first witness, the court stated, "Let's go off the record for a minute," a discussion was held off the record, and the hearing was concluded. What occurred off the record generated all further proceedings and this appeal.
It is undisputed that in the open-court, off-the-record discussion the parties stipulated and agreed to the entry of a final judgment which would resolve the lawsuit by "splitting the difference" between the base rental amount each calculated was due and agreed that this same "splitting the difference" formula would be used to determine the base rental amount in the event that Gaines later exercised his right of first refusal for an additional five-year period. Moreover, no one disputes that the parties agreed to exchange "releases."
When it came time, however, to prepare and file the documents necessary to effectuate this agreement, Nortrust insisted that general releases be exchanged. Gaines refused to sign a general release, stating that he would release Nortrust only in respect to the dispute which was the subject matter of the declaratory judgment action, reserving any right he might have to sue Nortrust for any other cause of action arising under the lease or otherwise. Nortrust moved to enforce the "settlement," including that part of the settlement concerning the nature of the releases to be exchanged.
The trial court recalled nothing of the off-the-record settlement discussion.[1] *1039 Counsel for Nortrust represented that the parties agreed to exchange "releases," and had not specified any restrictions. From that the trial court found that:
"at a minimum, the parties agreed to release whatever existing claims they may have had against each other involving the Lease. This finding is bolstered by the Court's belief that Nortrust would not likely have intended to `settle' its way into a second lawsuit with Mr. Gaines involving the same Lease."
Thereafter, the court declared:
"Nortrust has asked this Court to use its contempt powers to enforce the settlement agreement by ordering Defendant Gaines to execute the agreed release. Such a procedure is unnecessary as the Court finds and concludes that Rule 1.170, Florida Rules of Civil Procedure, bars any unasserted pre-existing claims the parties may have had against each other arising out of the Lease.[2] The Court has therefore determined to enforce the settlement agreement by the entry of this Judgment."
The judgment entered established the base rental through 1985 and the compromise procedure for determining the base rental in the event the lease were thereafter extended for an additional five years. Gaines appeals. He asserts that since there was no agreement to release Nortrust from other claims arising out of the lease, the trial court erred in finding such an agreement to exist and enforcing it through its judgment.
In addressing Gaines' contention, we are guided by the following principles. A fundamental principle of the law of contracts is that there must be mutuality of agreement, and there can be no such mutuality when there is no common intention. Kuharske v. Lake County Citrus Sales, 44 So.2d 641 (Fla. 1949). See also Hewitt v. Price, 222 So.2d 247 (Fla. 3d DCA 1969). Settlement agreements are to be interpreted by and are governed by the same principles of law interpreting and governing contracts. See Dorson v. Dorson, 393 So.2d 632 (Fla. 4th DCA 1981); Dungan v. Colt Industries, Inc., 532 F. Supp. 832 (E.D.Ill. 1982). Thus, "[t]o be judicially enforceable ... a settlement agreement ... must be sufficiently specific as to be capable of implementation... . [C]ourts will not attempt to enforce a settlement agreement that is too vague or ambiguous in its meaning or effect." United Mine Workers v. Consolidation Coal Co., 666 F.2d 806, 809-10 (3d *1040 Cir.1981) (citations omitted); United Mine Workers v. Barnes & Tucker Co., 561 F.2d 1093 (3d Cir.1977). Parties to a settlement agreement must reach mutual agreement on every essential element of the proposed settlement. Montagna v. Holiday Inns, Inc., 221 Va. 336, 269 S.E.2d 838, 845-46 (1980). "For [a settlement] to be binding on the parties it should be clear that it is full and complete, covers all issues, and is understood by all litigants concerned." Cross v. Cook, 147 Ga. App. 695, 250 S.E.2d 28, 29 (1978). See also Rock-Weld Corporation of Puerto Rico v. Rock-Weld Equipment Corp. of Florida, 184 So.2d 186 (Fla. 3d DCA 1966) (in order to constitute a settlement agreement, the language of the agreement must be clear).
In the present case, no meeting of the minds as to an essential element of the agreement existed: Gaines and his counsel believed the undertaking to exchange releases involved releasing Nortrust from any past and further claim under the lease that the base rental was to be computed by averaging the rent paid by all tenants and being relieved of Nortrust's claim that only the average rents of new and renewal tenants were to be used in the computation[3]; Nortrust and its counsel believed that the release was to be a general release, that is, a release of any and all claims of any type and description that either party might have against the other; and the trial judge conjectured that at least the parties must have agreed to release each other from claims relating to the lease.[4] Which of these possible releases was to be exchanged was neither clearly expressed nor mutually understood during the discussions. While the trial judge may have logically concluded that Nortrust would not have agreed to accept anything less than a release of all claims arising under the lease, his logic is not a substitute for the missing ingredient, that is, a mutual understanding between the parties.
We conclude, therefore, that there was no settlement agreement, and the trial court's judgment purporting to enforce a settlement agreement must be reversed.
Reversed and remanded for further proceedings.
NOTES
[1] At the hearing on the motion to enforce the settlement, the following exchange took place:

"[NORTRUST'S COUNSEL]: That there is no doubt that with respect to that settlement agreement in June here the parties split the dollars. We are not arguing about the split of the dollar fee. There is no doubt that the parties agreed to exchanging releases.
"THE COURT: Did you have a court reporter present?
"[NORTRUST'S COUNSEL]: We did. And I reviewed the transcript and that was off the record. There was nothing in the transcript with respect to the form of the release.
"THE COURT: What does the transcript say, they will exchange releases?
"You better get the transcript to me at the same time.
....
"[NORTRUST'S COUNSEL]: Here is the key. The parties agreed to a release. Your Honor can find what the parties meant when they agreed to a release.
"THE COURT: Did they agree to it? Let me look at the transcript."
Of course, the transcript to which the court referred contained no settlement discussion at all.
[2] The trial court's finding and conclusion "that Rule 1.170, Florida Rules of Civil Procedure [the compulsory counterclaim rule], bars any unasserted pre-existing claims the parties may have had against each other arising out of the Lease," is, in our view, a gratuitous statement of law which has no legal effect on the future rights of the parties. See Glatstein v. City of Miami, 399 So.2d 1005 (Fla. 3d DCA 1981) (irrelevant finding in bond validation proceeding that city had power to enter into management contract for theme park does not preclude assertion in subsequent litigation that city without power to enter into contract); Sherbill v. Miller Manufacturing Co., 89 So.2d 28 (Fla. 1956) (trial court's declaration that certain property was homestead, an issue not before it, not res judicata in subsequent litigation). See also State ex rel. Biscayne Kennel Club v. Board of Business Regulation, 276 So.2d 823 (Fla. 1973); State ex rel. Helseth v. DuBose, 99 Fla. 812, 128 So. 4 (1930); Bunn v. Bunn, 311 So.2d 387 (Fla. 4th DCA 1975); Diplomat Electric, Inc. v. Westinghouse Electric Sup. Co., 430 F.2d 38 (5th Cir.1970). Absent an agreement by the parties to bring an end to all unasserted claims under the lease, the only matter appropriate for adjudication by the court below was to decide the issue of the proper method of computing the base rental under the lease or, if the parties truly settled the case, to enter judgment pursuant to the settlement. The issue of whether an adjudication, through settlement or litigation, of the disputed base rental issue would act as a bar to other existing unasserted claims under the lease is one to be decided at such time when a court is presented with such claims and the responsive assertion that such claims properly should have been brought as compulsory counterclaims in prior litigation. In sum, the trial court's view of the future effect of its own judgment is without legal efficacy.
[3] The case is thus distinguishable from Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co., 356 N.E.2d 837, 42 Ill. App.3d 865, 1 Ill.Dec. 555 (1976), upon which Nortrust relies. There, the parties, through their counsel, reached a meeting of the minds. Thereafter, one of the principals stated that he misunderstood the terms of the agreement. The Illinois court held that the client was bound by his attorney's acceptance of the agreement, the terms of which were clearly understood by counsel.
[4] Nortrust's reliance on Sheffield Poly-Glaz, Inc. v. Humboldt Glass Co., supra, is misplaced in this respect as well. The trial judge in Sheffield had a distinct recollection of the settlement discussion which occurred. Of course, in the present case, even if the trial judge were to have recalled that the parties agreed to exchange "releases," his recollection would not enhance Nortrust's position, since the parties disagree as to what "releases" meant.