495 So.2d 859 (1986)
DANIA JAI-ALAI PALACE, INC., Carrousel Concessions, Inc., and Saturday Corporation, Appellants,
v.
Gladys SYKES, Appellee.
No. 85-1059.
District Court of Appeal of Florida, Fourth District.
October 8, 1986.
Mercedes C. Busto of Bailey & Dawes, Miami, for appellants.
Gilbert A. Haddad and Gary Gerrard of Haddad, Josephs & Jack, Coral Gables, for appellee.
GLICKSTEIN, Judge.
This is an appeal from a final judgment in favor of plaintiff/appellee. We affirm.
Plaintiff/appellee Gladys Sykes had obtained a judgment in the amount of $775,000 against Dania Jai-Alai Palace, Inc. (Dania), Carrousel Concessions, Inc. (Carrousel), and Saturday Corporation (Saturday). This judgment was reversed and a new trial was ordered by the Florida Supreme Court, 450 So.2d 1114. The court also held as a matter of fact and law that Saturday was not liable to Sykes.
Because of the reversal, appellants moved the trial court for restitution of $600,000 paid to Sykes by appellants' insurers. They sought, also, interest on that money and taxation of appellate costs to Sykes. While these motions were pending, counsel for the appellants and Sykes' counsel discussed possible settlement of their clients' claims against each other.
Appellants were also in process of suing their primary and excess insurers for breach of duty. These insurers had refused to post the supersedeas bond for the appeal, which appellants therefore paid for themselves, or to pay appellate attorneys' fees. The insurers had also each paid the *860 plaintiff $300,000 without the permission or knowledge of the appellants. There had thus been a balance of $175,000 plus interest and costs on the judgment prior to reversal.
According to the evidentiary hearing held January 25, 1985, the attorneys agreed, in an August 15, 1984, conversation, that the parties would settle for $6,000 if there was an exchange of mutual releases that did not objectively prejudice either party. Gilbert A. Haddad, plaintiff/appellee Sykes' attorney, undertook to prepare a mutual general release, and sent a draft copy to defendants/appellants' counsel, William R. Dawes, for editing. Haddad's letter to Dawes of August 15, 1984, purports to confirm the settlement of all claims by or against Mrs. Sykes to be paid by defendants/appellants, and informs Dawes that Haddad has asked a lawyer in his firm, Mr. Gerrard, to prepare a mutual general release that will objectively protect the interests of both sides and send Dawes a draft.
The release that Haddad's office prepared referred to a settlement in the amount of $606,000, and contained a provision under which the defendants would defend and indemnify Mrs. Sykes should the insurance companies seek return to them of the money they had paid her. Appellants opposed an acknowledgment of the payments by the insurers, because it might prejudice their case against the insurers by being construed as a ratification. They also opposed the indemnification provision.
Dawes and Haddad met October 5, 1984. According to Dawes' testimony, he told Haddad at that meeting that the settlement was off. According to Haddad's letter of October 9, he had agreed at the October 5 meeting to delete the indemnity provision; and Dawes had agreed there had been a meeting of the minds regarding the $6000 settlement. Haddad sent a copy of the proposed release, signed by Mrs. Sykes, with Haddad's notation about deletion of the indemnity provision, and said the original release would be delivered in exchange for the $6,000 check and appellants' release to Mrs. Sykes. Haddad's letter authorized Dawes to amend the release to be signed by the appellants. Haddad also wrote that if the check and the release were not received by October 18, 1984, Sykes would move the court to enforce the settlement.
Haddad had apprised the court of a settlement by letter of August 15, 1985. Appellants' counsel Guy B. Bailey, Jr., wrote the court on October 10, 1984, to say that while the attorneys had thought there would be a settlement at the time of Haddad's letter, there had subsequently arisen disagreements that precluded agreement; and there was no settlement.
On October 17, 1984, Mrs. Sykes filed a motion to enforce settlement. The parties submitted briefs and an evidentiary hearing was held. Testimony was received from both Haddad and Dawes, and a deposition by Dawes was also put in evidence, together with various documents and letters.
The trial court entered an order on February 28, 1985, granting plaintiff's motion to enforce settlement. On March 13, 1985, the court entered a final judgment against Dania and Carrousel and in favor of Mrs. Sykes, for $6,000 plus interest, and dismissed the action as to all claims. The appellants moved for rehearing or clarification but the motion was denied. This appeal followed.
The issue is whether the trial court erred in enforcing a settlement, because there had not been a meeting of the minds between the parties as to every essential element, and appellee proposed material variations from the original understandings which constituted a counteroffer and which appellants rejected. We conclude that the court did not err.
The essence of appellants' argument seems to be that there had been only tentative agreement, or agreement only in principle, to a settlement; that the flesh appellee's counsel tried to put on the barebones of the tentative agreement was exceedingly unappetizing to appellants and they could not accept it, and that the court should not have enforced a settlement that had not *861 been reached by the parties. According to appellants, the nature of the differences between what was tentatively agreed to and what appellee tried to insert into the settlement is as follows: the preliminary agreement was that appellants would give appellee $6,000 in satisfaction of her $200,000 or so worth of claims, and there would be a mutual general release; but Sykes then tried to work into the release (1) the $600,000 the appellants' insurers had paid her without consulting the insureds, and (2) indemnification by appellants if the insurers tried to get their money back from appellee. Moreover, (3) the two proposed releases were by no means mutual in the sense of their containing similar provisions.
Appellants call attention to the statement in Don L. Tullis and Associates, Inc. v. Benge, 473 So.2d 1384 (Fla. 1st DCA 1985), that settlement agreements are to be interpreted and governed by the law of contracts. Appellants contend that the purported settlement agreement here was unenforceable because there had not been a meeting of the minds on every essential element and because appellee's proposed release constituted a counter offer which appellants rejected.
Appellee argues that there was an agreement; that the form of the releases was incidental rather than essential; that appellants were free to edit the proposed release, submitted to them, any way they wished, and that the proposed release therefore was not a counteroffer at all, but an effort to expedite execution of the settlement.
Appellants' counsel is workmanlike in discussing the law that pertains when there is only an agreement to agree, one or more essential provisions of the agreement remains to be worked out, and the parties are unable to agree as to such provision or provisions. E.g., Goff v. Indian Lake Estates, Inc. 178 So.2d 910 (Fla. 2d DCA 1965). But this discussion does not help when we confront the question of whether the form of the mutual general release was essential.
On the surface, the opinion in Gaines v. Nortrust Realty Management, Inc., 422 So.2d 1037 (Fla. 3d DCA 1982), may appear instructive, because it, too, turned on a question of an exchange of releases. There, however, it had been agreed releases would be exchanged, but they had not been characterized, and the landlord was willing to give only a specific release as to the issues already identified between the parties in the lawsuit, whereas the tenant insisted on a general release. It was found there had been no meeting of the minds as to an essential element of the agreement  the nature of the releases that were to be exchanged. Here, the parties appear to agree that the original common intention was to give mutual general releases; the problem is only that such releases were never signed. We perceive the present facts as significantly different from those of Gaines.
In Don L. Tullis and Associates, the appellant sought reversal of an order requiring specific performance of a settlement agreement entered by the parties in a previous suit. Appellant contended the agreement was unenforceable on several grounds, one of which was that the agreement reached had been no more than an agreement to agree, because it called for subsequent documentation, and the parties had not agreed on the definition of the term "prudent," which figured in determining what constituted an expense that was deductible before division of net income that would result after the merger of certain business accounts of the opposing parties, as called for in the settlement. The appellant contended the definition of "prudent" in the particular context was an essential element and critical to enforceability of the agreement. The appellate court took into account the knowledgeability and deliberateness of the parties and the extended experience of the lawyers, as well as a long-standing principle reiterated in Robbie v. City of Miami, 469 So.2d 1384 (Fla. 1985), and held the agreement enforceable. The principle from Robbie the court applied contains the concept that the making of a contract depends not on the parties' *862 having meant the same thing but on their having said the same thing. This can be said of the present parties. Tullis' argument based on a theory that there was a lack of mutuality of remedy also failed.
Current Florida law does not require that a settlement agreement be in writing. There was a short period during which we had a Florida Rule of Civil Procedure 1.030(d), since repealed, which was interpreted as requiring, for court enforcement, a written instrument, signed by the party against whom asserted. E.g., Moore v. Gunning, 328 So.2d 462 (Fla. 4th DCA 1976). With the rule, the writing requirement has also died, unless, we suggest, there is some specific reason why the Statute of Frauds applies.
Likewise we are not helped by the legal principle that the burden to establish assent by the opposing party is on the party seeking to enforce a settlement. See Nehleber v. Anzalone, 345 So.2d 822 (Fla. 4th DCA 1977); Cross-Aero Corporation v. Cross-Aero Service Corporation, 326 So.2d 249 (Fla. 3d DCA 1976); Goff, 178 So.2d 910. Whether appellee met this burden or not depends on whether the signing of mutual general releases was an essential condition of the settlement.
In claiming Sykes' proposed release was a counter offer, appellants contend it should be viewed objectively, rather than from the standpoint of her subjective intent. This is generally correct, but in this case there was substantial competent evidence that the preparation of the release by plaintiff's lawyers, rather than by defendants' lawyers, was done as an accommodation, and that it was understood all along that whatever plaintiff's counsel submitted could be edited by the defendants' counsel. In light of this continuing circumstance, however different Mrs. Sykes' proposed release may have been from the oral understanding concerning the mutual general release, the record supports the trial court's unwillingness to conclude that her proposal was a counter offer. The objective test of Robbie and Tullis has been met; namely, there was an enforceable settlement because the parties' attorneys in initially coming to an agreement said the same thing as to what were to be the terms of the settlement. Accordingly, the record sufficiently supports the trial court's conclusion that there was an enforceable settlement, and its decision to enforce it.
LETTS, and DELL, JJ., concur.