**AMVEST CAPITAL CORPORATION, Plaintiff,**

v.

**BANCO EXTERIOR de ESPANA, S.A., Defendant.**

No. 86–0464–Civ.

United States District Court, S.D. Florida.

Dec. 9, 1987.

---

Jack E. McClard, Ann T. Burks, Hunton & Williams, Richmond, Va., Jose I. Astigarraga, Steel, Hector & Davis, Miami, Fla., for plaintiff.

Herschel E. Sparks, Jr., Francis X. Sexton, Jr., Hughes, Hubbard & Reed, Miami, Fla., for defendant.

## ORDER

MARCUS, District Judge.

This cause has come before the Court on Plaintiff's motion for partial summary judgment and upon Defendant's cross-motion for summary judgment. Plaintiff seeks compensatory and punitive damages, as well as attorney fees and costs pursuant to a 13 count complaint brought against the Defendant. The instant motion seeks summary judgment on Count VIII for unjust enrichment. Defendant's cross-motion for summary judgment is directed to all counts.

Briefly stated, this action is centered on a series of transactions through which Plaintiff, Amvest Capital Corporation ("Amvest"), allegedly "lost" $667,372.64 due to the conduct of its employee Jose Mayoral and the Defendant, Banco Exterior de Espana, ("BEE"). The unjust enrichment count alleges that the Defendant profited by that amount and seeks restitution. Of primary importance to the resolution of this motion is the determination of whether there exists an issue of material fact as to whether Mayoral was an agent of Amvest in the subject transactions. Other questions exist as to whether the conduct of the parties estops Amvest from prevailing on the unjust enrichment claim; whether BEE has been released from any liability in this matter; and whether Mayoral was the "sole agent" of Amvest.

Jose Mayoral began as an employee of Amvest in 1973 or 1974. In 1977 he was given the title of Vice–President and General Manager of Puerto Rico Operations. In 1983, Mayoral became one of 10 Amvest corporate officers. Beginning in the early 1980's, Mayoral's territory was expanded to include Florida as well as Puerto Rico. His duties in Florida included the marketing and developing of funding services from financial institutions. He established an office in Miami and began to solicit business as a representative of Amvest.

Evidence submitted pursuant to the present motions indicates that Mayoral held negotiations with BEE officials in regard to at least four separate deals, one of which was consummated (the "first E.R. Foods transaction"). A subsequent transaction between Mayoral and BEE, which forms the subject of this action, is described, *infra*.

In 1984 Mayoral applied for a one million dollar line of credit with BEE purportedly in the name of Amvest. On August 27, 1984 BEE entered into a Revolving Credit Agreement (RCA) with Mayoral, purportedly on behalf of Amvest. Between September 10, 1984 and October 19, 1984 BEE "drew down" in four separate transactions from the RCA $1,050,000 upon the instructions of Mayoral. On or about October 22, 1984 BEE accepted a $3,556,169.60 transfer from another bank (Banco Central) into an account created and controlled by Mayoral. The transferred funds apparently belonged to either Amvest or InterAmerican University (IAU) a client of Amvest. Mayoral then purchased a $1,000,000 Certificate of Deposit (the "CD") with these funds.

On October 25, 1984 Amvest notified BEE that all transactions carried out in the name of Amvest for BEE should cease and the accounts frozen. On or about December 24, 1984 BEE set off $667,372.94 against the CD and thereafter wire transferred the balance of the CD to Amvest. The set-off is the amount that Amvest seeks to recover under the unjust enrichment count of this complaint.

■ Plaintiff has moved for summary judgment for unjust enrichment as to liability, the amount of compensatory damages of $667,372.94, and as to BEE's defense of agency based on apparent or actual authority.

An action for unjust enrichment "is an action at law, [however], it is equitable in nature and is founded on the equitable principle that no one ought to be unjustly

enriched at the expense of another." *Sharp v. Bowling*, 511 So.2d 363, 365 (Fla. 5th DCA 1987) (citations omitted). The gravamen of Plaintiff's motion is that because of the unauthorized acts of Mayoral, and the set-off by BEE, BEE was unjustly enriched in the amount of the set-off. Amvest maintains that the "enrichment" is the result of the recoupment, at the expense of Amvest, of what would have been a loss to BEE. The remedy of unjust enrichment is available "when to permit the defendant to keep the money would unjustly deprive the plaintiff of his ownership of the money." *Id.* (citations omitted). The Plaintiff's motion for summary judgment, in effect, asks this court to determine, as a matter of law, that the Defendants erroneously set-off the funds and received a benefit to which they are not entitled. Plaintiffs maintain that there is no genuine issue of material fact as to these "elements."

Central to the determination of this issue, is whether Mayoral was an agent of Amvest in the transaction described, *supra*. Amvest contends that Mayoral was not an agent, and therefore BEE had no right to set-off "its" funds against the debit created by the unauthorized drawdowns. On the other hand, BEE contends that Mayoral acted as an agent of Amvest, and therefore BEE's actions were proper.

> It is well settled under Florida law that "[t]he existence of an agency relationship, the nature and extent of the agent's authority, and the inclusion within the scope of that authority of a particular act are ordinarily questions to be determined by the jury or by the trier of facts in accordance with the evidence adduced in the particular case."

*Citibank N.A. v. Data Lease Financial Corp.*, 828 F.2d 686, 691 (11th Cir.1987) (quoting *Financial Fire & Casualty Co. v. Southmost Vegetable Co-op Ass'n.*, 212 So. 2d 69, 71 (Fla. 3rd DCA 1968)) (other citations omitted).

Plaintiff contends first, that BEE has the burden of proving the existence of the agency relationship; *Eberhardy v. General Motors Corp.*, 404 F.Supp. 826, 831 (M.D.Fla.1975); second that Amvest has

demonstrated that Mayoral had no actual or apparent authority to enter in the transaction at issue; and third, that BEE has not made a "showing sufficient to establish the existence of an element of [their] case," *Celotex v. Catrett*, 477 U.S. 317, ——, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273 (1986) —to-wit—agency. Amvest recites a litany of reasons why BEE should have been on notice that Mayoral was without the authority to engage in the transactions in the name of Amvest. In particular, Amvest relies on the theory that the documents provided BEE that purportedly gave Mayoral authority were facially devoid of any semblance of authenticity, and that therefore the Defendant had no right to rely upon them. Amvest claims that these documents, even if valid, would not grant Mayoral the authority he exercised, were illegible, and contained internal inconsistencies.

At this point we must examine whether the Defendant has produced any evidence which creates an issue of fact regarding the existence of an agency relationship. BEE contends that Mayoral had either apparent or implied authority to conduct the transactions. The "three primary elements [of an implied agency] are: (1) representation by the principal, (2) reliance upon that representation by a third person, and (3) a change of position by the third person in reliance upon such representation." *Ideal Foods Inc. v. Action Leasing Corp*, 413 So.2d 416, 418 (Fla. 5th DCA 1982) (citations omitted).

BEE contends that the representation made by the principal to the third party need not be direct, but that a representation to the community, or a "holding out" is sufficient to confer apparent authority. *See* Restatement of Agency 2d § 8 comment b. " '[A]pparent authority' exists only where the *principal* creates the appearance of an agency relationship." *Spence, Payne, Masington v. Gerson*, 483 So.2d 775, 777 (Fla. 3d DCA 1986) (emphasis in the original). BEE maintains that Amvest created such an appearance here.

In support of this contention, BEE cites a number of instances by which Amvest created an appearance of agency. Mayoral

was an officer of Amvest with the title of "vice President—Sales Administrator." He was known in the financial community as a representative of Amvest. BEE also points to an advertising campaign by Amvest in which a picture of Mayoral is displayed, as well as his inclusion in the 1982 and 1983 Annual Reports of Amvest. While these circumstances do not by themselves conclusively demonstrate that an agency relationship existed with respect to the contested transaction, we are satisfied that a triable issue exists as to the first prong of the requirements for apparent authority.

Amvest contends that even assuming arguendo that there was a representation of agency, BEE could not as a matter of law, have reasonably relied upon these "representations." Again, Amvest points to the patently flawed documents as evidence that BEE was not justified in treating Mayoral as an agent of Amvest. However, Amvest does not direct this Court to consider any ascertainable standard of reasonableness from which to measure BEE's conduct. Certainly, in the Plaintiff's view, no reasonable bank would have acted as BEE did. Perhaps it is correct. However, the Defendant's conduct can not be said to be absolutely lacking any foundation in common business practices. In any event, we are not prepared to find on this record that no reasonable fact finder, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, ——, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202, 213 (1986), could determine that BEE's conduct was reasonable. Given this conclusion, there can be no dispute that there exists a question of fact as to whether BEE actually changed their position as a result of this reliance.

Moreover, BEE contends that there exists a genuine issue of a fact as to whether Mayoral possessed implied authority to enter into the RCA with BEE. The existence of implied authority does not rest on a determination of whether the third party knew that the agent was authorized to perform certain acts. Instead, implied authority is derived from the actual authority granted the agent and enables the agent to perform acts necessary to accomplish the objectives for which there exists actual authority. *See generally* Restatement of Agency 2d § 7 comment c. BEE maintains that Mayoral's authority to establish and develop the Florida office of Amvest empowered him to enter into transactions such as the RCA. While Defendant has not offered convincing evidence that Mayoral was given the unfettered authority to borrow funds on behalf of Amvest, this argument underscores the position that the exact scope of Mayoral's authority is undetermined and remains a triable issue of fact.

Finally, BEE asserts that the gross recklessness of Amvest's assignor, IAU, estops Amvest from recovering for unjust enrichment. Because we are satisfied that issues of fact exist as to the nature and extent of Mayoral's agency, we need not address this point as a separate grounds for the denial of the motion for Summary Judgment. Accordingly, Plaintiff's Motion for Summary Judgment must be DENIED.

■ BEE has cross-moved for Summary Judgment on two grounds. First, BEE claims that IAU, Amvest's assignor released BEE of all liability as to it or its assignee, Amvest. Second, BEE contends that AMVEST is estopped from recovering on any theory because Mayoral was Amvest's "Sole Actor" in Florida.

BEE suggests that a series of letters between IAU and BEE demonstrates that IAU released BEE of all claims against it. BEE characterizes the letter as "releasing BEE of all claims in consideration for the dismissal by BEE of its interplender and declaratory actions...." [Defendant's Memo at 51]. However, BEE fails to point to any evidence which unequivocally indicates a release. A letter dated February 25, 1985 from Rafael Zapata, Vice–President of Finance of IAU states "we have not carried out any transaction with Banco Exterior nor do we have any claims against this Institution." [Defendant's Memo at Ex. 30].

This evidence, by itself, does not indicate that IAU had in fact agreed to release BEE from any claims, or that IAU knew at that

time whether it had any claims to release. Further, there is no conclusive evidence that the dismissal of the suit was necessarily in exchange for the consideration of a release, particularly in light of the fact that the dismissal was without prejudice.

A fundamental principle of the law of contracts is that there must be mutuality of agreement, and there can be no such mutuality when there is no common intention. *Kuharske v. Lake County Citrus Sales,* 44 So.2d 641 (Fla.1949). *See also Hewitt v. Price,* 222 So.2d 247 (Fla. 3d DCA 1969). Settlement agreements are to be interpreted by and are governed by the same principles of law interpreting and governing contracts. *See Dorson v. Dorson,* 393 So.2d 632 (Fla. 4th DCA 1981); *Dungan v. Colt Industries, Inc.,* 532 F.Supp. 832 (E.D.Ill.1982). Thus, "[t]o be judicially enforceable ... a settlement agreement ... must be sufficiently specific as to be capable of implementation.... [C]ourts will not attempt to enforce a settlement agreement that is too vague or ambiguous in its meaning or effect." *United Mine Workers v. Consolidation Coal Co.,* 666 F.2d 806, 809–10 (3d Cir.1981) (citations omitted); *United Mine Workers v. Barnes & Tucker Co.,* 561 F.2d 1093 (3d Cir.1977). Parties to a settlement agreement must reach mutual agreement on every essential element of the proposed settlement. *Montagna v. Holiday Inns, Inc.,* 221 Va. 336, 269 S.E.2d 838, 845–46 (1980). "For [a settlement] to be binding on the parties it should be clear that it is full and complete, covers all issues, and is understood by all litigants concerned." *Cross v. Cook,* 147 Ga.App. 695, 250 S.E.2d 28, 29 (1978). *See also Rock–Weld Corporation of Puerto Rico v. Rock–Weld Equipment Corp. of Florida,* 184 So.2d 186 (Fla. 3d DCA 1966) (in order to constitute a settlement agreement, the language of the agreement must be clear). *Gaines v. Nortrust Realty Management, Inc.,* 422 So.2d 1037, 1039–40 (Fla. 3rd DCA 1982). We remain unconvinced that these documents unambiguously release BEE from any claims IAU may have against it. Accordingly, Amvest cannot be estopped, at this point in the proceedings from bringing this action as an assignee of IAU.

■ Finally, BEE maintains that since Mayoral was Amvest's sole actor in Florida, summary judgment is appropriate. According to BEE, under this doctrine "where a principal has one agent who is the principal's sole actor on its behalf, all knowledge of the agent is imputed to the principal, notwithstanding the agent's fraud." [Defendant's Memo at 59] (citations omitted).

We find that the sole actor doctrine does not afford the Defendant a basis for summary judgment. Under the application of the rule, in this case, there are issues of fact still to be determined. Even though Mayoral was an officer of Amvest and was in charge of its Florida office, as noted *supra,* it is uncertain as to the nature and extent of his authority to act for the corporation. The sole actor doctrine is meant to place liability where innocent third-parties could not have been on notice that the officer or agent was engaged in self-dealing because that person acted as the corporation itself. However, "where it appears that the 'sole representative' does not close the transaction entered into for the corporation, but they are passed upon and approved by the board of directors, the reason for this rule fails." 3 Fletcher, *Cyclopedia Corporations,* § 827.1 at 158. (rev. ed. 1986). Amvest maintains that Mayoral was without authority to enter its funding contracts without the approval of the home office. The actual scope of Mayoral's authority remains in question and precludes summary judgment on this issue.

Accordingly, Defendant's Motion for Summary Judgment must be DENIED.