CORTIÑAS, J.
(dissenting).
I must respectfully dissent. Unlike the majority, I would confine my decision to the applicable standards of review: a de novo standard to review whether a contract provision regarding child support in the marital settlement agreement was ambiguous and an abuse of discretion standard to review modification of the former husband’s alimony obligations. Under those standards of review, I must affirm.
“Settlement agreements are contractual in nature and are therefore, interpreted and governed by contract law.” Comm’l Capital Res., LLC v. Giovannetti, 955 So.2d 1151, 1153 (Fla. 3d DCA 2007) (citing Cadle Co. v. Schecter, 602 So.2d 984, 985 (Fla. 3d DCA 1992)). “Where a contract is susceptible to two different interpretations, each one of which is reasonably inferred from the terms of the contract, the agreement is ambiguous.” Id. (citing Miller v. Kase, 789 So.2d 1095, 1097-98 (Fla. 4th DCA 2001)). “[W]hether an ambiguity exists in a contract is a question of law.” Essex Ins. Co. v. Simpler, 911 So.2d 794, 794 (Fla. 1st DCA 2004). Therefore, “the standard of review applicable to the determination of whether a contract is ambiguous is the de novo standard of review.” Weisfeld-Ladd, v. Estate of Ladd, 920 So.2d 1148, 1150 (Fla. 3d DCA 2006) (quoting Wagner v. Wagner, 885 So.2d 488, 492 (Fla. 1st DCA 2004)). “Thus, ‘[t]o be judi- *40 dally enforceable ... a settlement agreement ... must be sufficiently specific as to be capable of implementation.... [C]ourts will not attempt to enforce a settlement agreement that is too vague or ambiguous in its meaning or effect.’ ” Gaines v. Nortrust Realty Mgmt., Inc., 422 So.2d 1037, 1039-40 (Fla. 3d DCA 1982) (quoting United Mine Workers of Am. v. Consolidation Coal Co., 666 F.2d 806, 809-10 (3d Cir.1981) (citations omitted)). See also Rock-Weld Corp. of Puerto Rico v. Rock-Weld Equip. Corp. of Fla., 184 So.2d 186 (Fla. 3d DCA 1966) (stating that in order to constitute a settlement agreement, the language of the agreement must be clear).
The precise language of Article XVII of the marital settlement agreement, which the trial court reviewed, reads as follows: “The Husband agrees to support the parties’ adult disabled child as he has done in the past. The Husband’s support shall be a supplement, but not supplant, the child’s government benefits and shall be subject to modification in accordance with the child’s needs.” (Emphasis added).
This language instigated six years of disputes between the former wife and the former husband. Relying on its vague pronouncement, the former wife characterized the adult disabled son’s expenses (such as large screen TVs, computers, and cell phones) as “needs” while the former husband termed them “wants.” The former wife testified to her belief that, “consistent with the terms of the parties’ [ajgreement, the former [hjusband was to provide for 100% of [the child’s] expenses, whatever they may be.” (Emphasis added). She believed that these comprised “all of [the child’s] needs and that he would have the same type of lifestyle and things that he had during the parties’ intact marriage,” such as “a computer ... every other year ... cruises, European vacations, all different kinds of vacations ... a few thousand dollars for his birthday....” In contrast, the former husband testified that he believed the child “should be cared for, but he shouldn’t be provided every single thing he wants.” He sought a “defined definition” of his responsibility because the child’s wants “were disproportionate and exaggerated, because of [his] medical condition, and his mother’s encouragement.” Considering the years of litigation resulting from the agreement, the former wife’s counsel conceded that the marital settlement agreement was “poorly drafted” and “vague as to what [the child] was getting.”
Not at all surprisingly, the trial court found Article XVII to be ambiguous and clarified it. The court derived its authority from section 61.13(l)(a), Florida Statutes, which authorizes modification of the amount and terms and conditions of child support when it is in the child’s best interest to do so, concluding that “the litigation has caused distress to [the child][5] and it is in his best interest that the child support be defined as a sum certain.” In addition, Article XVII itself provides that the child support was subject to modification “in accordance with the child’s needs.”[6]
The majority reverses the very able trial judge’s determination of ambiguity by terming the above-referenced language “clear and unambiguous and in need of no clarification.” Huh? Far from being a model of crystalline clarity, this language is so evidently unclear and obviously ambiguous that the correctness of the trial *41 judge’s finding of ambiguity can only be undone and reversed through a “we know best” standard of review. See Dep’t of Highway Safety & Motor Veh. v. Saleme, 963 So.2d 969, 978 (Fla. 3d DCA 2007) (Cortiñas, J., dissenting).
When the parties to an ambiguous contract suggest different interpretations, “the issue of the proper interpretation is an issue of fact requiring the submission of evidence extrinsic to the contract bearing upon the intent of the parties.” Bacardi v. Bacardi, 386 So.2d 1201, 1203 (Fla. 3d DCA 1980). The trial court followed this procedure and ultimately accepted the former husband’s interpretation of Article XVII. Despite precedent mandating that because “intent is an issue of fact, the trial court’s ruling ‘should be sustained if supported by competent substantial evidence,’ ” Weisfeld-Ladd, 920 So.2d at 1150 (quoting Dinallo v. Gunster, Yoakley, Valdes-Fauli & Stewart, P.A., 768 So.2d 468, 471 (Fla. 4th DCA 2000)), the majority has intruded upon the trial court’s fact-finding province and summarily determined the former husband’s obligation is to pay “all of his son’s expenses.”[7]
Similarly, the majority eviscerates the abuse of discretion standard that appellate courts are required to use when reviewing orders modifying alimony and child support. See Leonard v. Leonard, 971 So.2d 263, 264 (Fla. 1st DCA 2008); Woolf v. Woolf, 901 So.2d 905, 911 (Fla. 4th DCA 2005). Judicial discretion is abused only
when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.
Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980) (quoting Delno v. Mkt. St. Ry. Co., 124 F.2d 965, 967 (9th Cir.1942)).
Here, the trial court, invested with authority by section 61.14(l)(a), Florida Statutes, made a modification order “as equity requirefd], with due regard to the changed circumstances or the financial ability of the parties or the child, decreasing ... the amount of ... alimony provided for in the agreement or order.” The court did so after “considering] the relative financial circumstances of both parties at the time of the final judgment compared with the parties’ relative financial circumstances when the petition for modification was filed” and determining that the former husband had demonstrated “a substantial, material, permanent change in circumstances which was not contemplated at the time the amount of alimony originally was set.” Carls v. Carls, 890 So.2d 1135, 1137-38 (Fla. 2d DCA 2004) (citing Pimm v. Pimm, 601 So.2d 534, 536 (Fla.1992)).
The majority seems to forget that “[i]n reviewing a true discretionary act, [an] appellate court must fully recognize the superior vantage point of the trial judge ...,” who was in a position to “personally observe the participants and events of the trial.” Canakaris v. Canakaris, 382 So.2d at 1202-03. Instead, after reciting the former husband’s income for the past seven years, the majority concludes that he suffered “a substantial, material, involuntary, and permanent change in circumstances not contemplated at the time the final judgment ... occurred,” entitling him *42 to a reduction in alimony,[8] yet spends several more pages analyzing numbers and rehearsing facts to explain its reversal of the amount of the trial court’s modification. As the trial court had already evaluated the parties’ ample testimony and record evidence in making its well-reasoned ruling, this Court should not have rehashed them and interfered with the trial court’s discretionary power.
Accordingly, I would affirm.

. Due to the acrimonious litigation, the child’s relationship with his father suffered, and he was left ill, "extremely confused,” and in therapy.

. I agree with the majority that an independent guardian should have been involved; however, this does not discount the correctness of the trial judge's determination.

. In contrast, the majority states two pages later that the former husband is required to pay "for the goods and services needed by his son." If that is the case, why did the majority feel the need to reverse the trial court’s formula, which was meant to provide "ample support to pay for [the child's] needs and many of his wants"?

. In contrast, three pages earlier, without looking at his income, the majority decides that "no substantial change in circumstances was demonstrated to support modification” of the child support obligation.